28 Ill. App.3d 422 (1974)
328 N.E.2d 357
THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellant,
v.
MARCELLA MOKRES et al., Respondents-Appellees.  (MARCELLA MOKRES et al., Appellees.)
No. 12267.
Illinois Appellate Court  Fourth District.
December 30, 1974.
Rehearing denied June 11, 1975.
William J. Scott, Attorney General, of Springfield (William P. Ryan, Roy E. Frazier, Jr., Robert F. Scott, and Charles W. Williams, Assistant Attorneys General, of counsel), for appellant.
Barber and Barber, of Springfield (Carl O. Hoffee and Barry O. Hines, of counsel), for appellees.
Judgment affirmed.
Mr. JUSTICE SMITH delivered the opinion of the court:
 1 This is an appeal from the circuit court of Sangamon County where a judgment in favor of the defendants awarded $492 for forty-one one-thousandths (.041) of an acre of land taken and $42,000 as damages to the remainder in a condemnation suit. The issue involved may be rather simply stated and it is: Where the abutting property owners have previously *423 conveyed property to the State of Illinois for road purposes reserving the right of access to a public highway via a frontage road by voluntary conveyance for a consideration, do they have any compensable value recoverable in a condemnation proceeding which changes that point of access to a different place reached by a more circuitous route. We answer that question `yes'.
In 1959 the State acquired from the Neumans by warranty deed 2.515 acres of land off of a 27.975 tract. In the present suit the State seeks to take an additional forty-one one-thousandths of an acre of land from the same total tract. There is no issue as to this. At the time of the original acquisition, the Neumans, by warranty deed, released to the State all existing potential and future rights of access to Hazel Dell Road, except as follows: "Reasonable outlet from the abutting land of the grantors will be provided, but only via a frontage road to be constructed on the outside portion of the adjacent right-of-way. The said frontage road will connect with the main traffic lanes of FA Route 196 only at a point 493.00 feet, more or less west of the east line of section 21 aforesaid." Following the acceptance of this dedication, the Department took possession of the Neuman acreage so acquired and constructed the interchange and the frontage road, including the access point agreed upon. This access point was directly in front of the residence. Before the present suit was instituted and in 1964 the Department modified its plans and determined to make FA Route 196 (Hazel Dell Road) a controlled access highway which required the elimination of the access point referred to in the above deed. In order to accomplish this, the Department sought the forty-one one-thousandths acre of land involved and rerouted the frontage road, destroyed the access point referred to in the deed, and provided the Neumans with ingress and egress to their property by a more circuitous route. There is no dispute between the parties as to the taking of the forty-one one-thousandths acre of land in this condemnation suit, and its taking is necessary to the extension of the frontage road as now contemplated to provide the owners with ingress and egress to their property at a different point and by a more circuitous route.
 2 That the access rights reserved in the deed had some value are clearly indicated. The rights of access, ingress and egress condemned by this petition are valuable property rights and cannot be taken or materially impaired without just compensation. (Department of Public Works & Buildings v. Wolf, 414 Ill. 386, 111 N.E.2d 322.) In People ex rel. King v. Lorenz, 34 Ill.2d 445, 216 N.E.2d 123, we find a situation somewhat factually similar to the case at bar except that in that case the State did not construct the frontage road as it agreed to. In that case the supreme court clearly indicated that a change in the design of the road *424 under the facts shown in that record was a material breach of the condition upon which the dedication was made. They therefore held that the condition in the deed was enforceable through mandamus or the dedicatory deed would be voided. Here we have a situation where the access rights were specifically reserved in the dedicatory deed. The holding in that case is in keeping with section 8-103 of the Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 8-103), in that it permits a public body to acquire by purchase or condemnation all property and property rights necessary for the location, construction, maintenance and use of a freeway including any rights or easements of access, crossing, light, air or view to, from or over the freeway vested in property not so taken and abutting the freeway. What then is the real loss that the abutting property owners suffered by the change in this frontage road?
The Department states that the only losses properly considered are (1) decline in accessibility, (2) decline in market value, and (3) loss of potential to exploit commercially the express lanes of the highway. By filing its suit to obtain the additional land to extend the previously existing frontage road, the State clearly admits that it had an obligation under the dedicatory deed to do just that and to provide the property owners reasonable access rights. Otherwise if it destroyed the previous access rights it brings itself squarely within the condemnation of People ex rel. King v. Lorenz. It would therefore seem to follow that either under the original dedicatory deed or under the statute itself, the onus is on the Department to provide these abutting landowners with a reasonable access to FA Route 196. In default thereof they must pay a just compensation.
 3 The right of the State to regulate and control public highways for the benefit of the public even though such regulation and control may inconvenience an abutting property owner is clearly established so long as that regulation or restriction is reasonable. (Ryan v. Rosenstone, 20 Ill.2d 79, 169 N.E.2d 360.) The right of a "reasonable means of ingress from and egress to the State Highways" is preserved by statute. Ill. Rev. Stat. 1973, ch. 121, par. 4-210.
 4 In the Department's reply brief, they ask this rhetorical question: "How long must the People of the State of Illinois be required to pay for highways and highway improvements which create potential benefits to abutting landowners; pay again to construct frontage roads for these abutting landowners and which are in furtherance of public safety; then be called upon to respond in damages to abutting property owners who would have no access right or value in the first place if it were not for the construction of the highway? This question is asked in connection with a discussion of the benefits to the Neuman property from the construction *425 of this highway and apparently on the theory that an award for damages to property not taken amounts to unjust enrichment. The short answer to that question is that so long as the Illinois Constitution remains as it is, and the statutes of this State remain as they are, the State must pay for property taken or damaged for public use. Article I, section 15, of the 1970 Constitution provides: "Private property shall not be taken or damaged for public use without just compensation as provided by law." (Ill. Const. (1970), art. I, § 15.) The statute heretofore quoted likewise makes an access right a valuable right and further provides that "the Department * * * may designate by agreement or stipulation points at which access will be permitted from the abutting property to the freeway * * *." In our view not alone through the statute but through the first dedicatory deed, the State recognized and preserved a valuable right in the abutting property owners. The abutting property owners likewise recognized the right of the State to take the property for just compensation. The Department has cited cases from other jurisdictions as well as law-review articles which present a contrary point of view on this point. The citations are neither persuasive nor controlling. As a reviewing court sitting in Illinois, we feel compelled to follow the constitution and the statutory law of the State of Illinois as we understand it. Such arguments may appropriately be presented to the legislature, and the question posed by the Department may be answered by the legislature but not by an intermediate reviewing court. We are clearly bound by the precise terms of the statute, the constitution and the case law in this jurisdiction. We may say in passing that to remove an access to a highway from the front of one's house to a distance somewhat less than 2 miles away cannot by this court be stated to be damage without injury as matter of law.
We have reviewed the testimony of the various witnesses in this case and find the usual widespread variation in opinions. Suffice it to say that the Department's appraisers generally speaking found no damage to the land not taken; the property owners' appraisers found otherwise. The opinions varied as to the adaptability of the abutting acreage. Most of them regarded the front 3 to 5 acres as best adaptable for commercial use or residential development. The testimony also shows that the defendants had been approached by an oil company but that no final agreement was ever reached. The right here taken we submit will effectively terminate any further pursuit of that matter at the access point taken. What the property owner now has is the same property with an access point somewhat less than 2 miles from where it originally was. We do not believe that cases relating to the regulation of diversion of traffic are applicable to the problem before us. The access to the State's system of *426 highways as it relates to the future use of the defendants' property is the basic issue involved in this case. As was stated in Department of Public Works & Buildings, v. First National Bank, 9 Ill. App.3d 633, 292 N.E.2d 487 appeal denied, 53 Ill.2d 607, the court said: "[T]he loss of direct access to U.S. Route 45 and its elevations are material impairments to the value of the remainder and were properly considered by the jury under the facts of this case." In the Department of Public Works & Buildings v. Divit, 25 Ill.2d 93, 182 N.E.2d 749, the property owner originally had direct access to a preferential route and after the taking its means of access was by a frontage road. In reversing a jury verdict awarding no damages to the remainder, the supreme court stated: "[T]he damage to be here sustained from the loss of direct access to route 54 * * * [was] present and real in character * * *." (See also Department of Public Works & Buildings v. Anastoplo, 14 Ill.2d 216, 151 N.E.2d 337.) The State may well argue that in some of these cases we were dealing with a direct access absent a frontage road and they are therefore distinguishable. We fail to see any distinction. Here the Neumans had direct access to the road by means of a frontage road. To say that the destruction of that direct access because a frontage road was established produces no damage begs the question. The destruction of the access is the same whether accomplished by a destruction of direct access from the property or by a direct access by means of a frontage road.
It is quite clear from this record that the issue of damages to the remainder was properly presented to the jury and that the jury's verdict is consonant with their view of the premises and within the range of valuation figures in evidence. We cannot say that their verdict is contrary to the manifest weight of the evidence or that no damage to the property owner is shown. Accordingly, the judgment of the trial court should be and it is hereby affirmed.
Affirmed.
TRAPP, P.J., and KASSERMAN, J., concur.