S. WALLACE MOFFITT *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF ROCK ISLAND, Defendant-Appellant.

Third District    No. 79-265

Opinion filed October 24, 1979.—Supplemental opinion filed on denial of rehearing December 6, 1979.

Bernard C. Gillman and Dorothea O'Dean, both of Rock Island, for appellant.

Edward Eagle, of Eagle & Eagle, of Rock Island, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

In this cause, the city of Rock Island appeals from the judgment of the circuit court of Rock Island County which was entered, following a bench trial, as a result of which the trial judge entered an order setting aside a deed executed by plaintiffs which conveyed approximately 22 acres for a right-of-way to construct a road on what is described as 92d Avenue. In this action, which was filed as a mandamus action, the court also ordered defendant to institute condemnation proceedings to acquire the property involved, which, at that time, was occupied by a completed roadway constructed by the city of Rock Island, as part of 92d Avenue.

The action which was instituted by plaintiffs is asserted to be a mandamus action. Plaintiffs predicate that action upon a written agreement entered into on November 14, 1970, between the city of Rock Island and the plaintiffs which provided, in part:

> "It is agreed by the City of Rock Island, Illinois, that 92nd Avenue from Route 67 (Moffitts' property) west and north of the Centennial Expressway will be constructed and completed within 5 years from this date or the deed conveying said right-of-way shall be returned."

As part of the agreement defendant agreed to stub one water and one sewer line under 92d Avenue prior to the construction of the improvement, to be used when water and sewer service became available to the area and was desired by plaintiffs. As part of the understanding between the parties, also, the city agreed that the farm premises of the plaintiffs would be rezoned to a commercial zoning classification. The right-of-way acquisition was approved by the city council and a payment of $30,000 was authorized and paid to the plaintiffs for which the right-of-way was conveyed to the defendant city of Rock Island.

Appellant states that apparently an escrow arrangement had been worked out but that the right-of-way deed actually was recorded and that plaintiffs did not object to the recording of said right-of-way deed which vested the right-of-way title in the city of Rock Island.

The evidence indicated that the fair market value of the property which was conveyed, at the time of the conveyance, was between $86,000 and $110,000. It was, however, anticipated that the extension of 92d Avenue to the Centennial Expressway would encourage plaintiffs to

develop the remainder of their property for a commercial venture and would substantially enhance the value of the remainder of the property.

It is shown by the record that the city (working with the county) was to obtain the right-of-way for the road, which was to be constructed and which would establish a connection between the Centennial Expressway and 92d Avenue. Apparently, all of the road was in fact constructed on the right-of-way to a point 1½ miles from the connection to the Centennial Expressway. No taxes were paid on the property conveyed for the right-of-way after such conveyance to the city of Rock Island. Sometime after the construction of the roadway was undertaken by the city (with the county participating), the State of Illinois, acting through its representatives, advised the city and county that the planned connection was not consistent with the plans made by the State with regard to the Centennial Expressway and that the city and county could not proceed with the 1½-mile connection to the expressway; that the State would take over the obligation of constructing the remaining 1½-mile connection to the Centennial Expressway. The State took over and had entire control of construction of this portion of 92d Avenue and the connection to the Centennial Expressway.

It is shown of record that the city at all times kept requesting that the State complete the construction of this roadway connection. It appears that priorities in construction of roads by the State postponed construction of the connecting road, even though the State indicated it would be so constructed when funds became available for the State to construct such connecting road and junction with the Centennial Expressway. Meanwhile, the city, as a result of its agreement to stub a water and sewer line, remained ready and willing to do so and to complete the connection at any point where plaintiffs might designate the connections were desired. No such designation was made by the plaintiffs. It was also shown that the cost of the water and sewer facilities to the city would be approximately $200,000 as of time of the hearing instead of $66,000 at the time of the agreement. As of the time of the hearing in this cause, and since that time, the State project has not yet been completely funded, and no specific time when such project would be completed has as yet been determined, although the State has indicated that the project would be completed.

Prior to the filing of the instant action on March 23, 1978, no request was made by the Moffitts for reconveyance of the property referred to involved in the right-of-way, even though the five-year period mentioned in the right-of-way agreement had expired on November 16, 1975, and the action is based on the failure of the city to complete the road connection. The sum of $30,000 which was received by the Moffitts was not tendered to the city or to any city official, prior to filing the action, as a

return of purchase moneys. Although the $30,000 was "tendered," by recital, in the original and the amended complaints, the defendant city of Rock Island filed a motion to dismiss on the ground of failure to make a demand and, also, of failure of plaintiffs to tender the money prior to instituting the suit. The trial court denied the motion to dismiss.

■■ On appeal in this court, defendant city of Rock Island contends that the amended complaint should have been dismissed for failure to allege that a reconveyance of the right-of-way sought to be directed by the trial court was previously demanded and that the demand was refused, or that such demand would have been unavailing. Failure to allege a demand normally renders a complaint for mandamus defective. *Eley v. Cahill* (1970), 126 Ill. App. 2d 272, 261 N.E.2d 819.

The plaintiffs point out that, obviously, the defendant was not in a position to complete the construction of 92d Avenue, in view of the fact that the State had the sole authority and power to do so, and a demand on the city to that effect would have been unavailing. The action which was filed by the plaintiffs not only sought to have the trial court direct that the city reconvey the right-of-way property upon the tendered return of the $30,000 received from the city, but, also, to require the city to institute condemnation proceedings to reacquire that property then already occupied by a completed roadway as part of 92d Avenue.

■■ In the amended complaint there is no allegation that a demand for reconveyance was made. The testimony presented at the trial established that no demand in fact was made and that there was no tender of the purchase money to the city prior to the filing of the complaint. Technically, the defendant's motion to dismiss should have been granted under such circumstances.

■■ In connection with the issues involved in this case, the city of Rock Island also asserts that there was in fact a waiver of the provision of the contract relating to the five-year period by conduct of the plaintiffs. No demand was made at the time the five-year period expired by the plaintiffs and plaintiffs knew that the city could not complete the connection to the expressway, but had completed all but 1½ miles of 92d Avenue and was also in the process of or ready to construct the facilities for water and sewer service under the terms of the contract. Such evidence of apparent waiver could arise from the failure to demand strict compliance with the contract provision when time for performance had expired. (See *Schmahl v. Aurora National Bank* (1941), 311 Ill. App. 228, 35 N.E.2d 689.) A provision of this type could be waived by a party benefiting from it, and such waiver could have been determined to have been made by reason of the activities of the plaintiffs in this case. It is true that they contend that they received no benefit, but they did have a rezoning to commercial classification of their adjoining premises and,

also, had provision made for available water and sewer lines which could be stubbed at points desired by plaintiffs, as noted in the record. See also *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, 360 N.E.2d 136; *Bartels v. Denler* (1975), 30 Ill. App. 3d 499, 333 N.E.2d 640.

The reliance of plaintiffs on the cases of *People ex rel. King v. Lorenz* (1966), 34 Ill. 2d 445, 216 N.E.2d 123, and *Robinette v. Department of Public Works & Buildings* (1971), 2 Ill. App. 3d 438, 276 N.E.2d 804, is misplaced. These cases involve the enforcement of conditions contained in the deed of dedication or the recorded plat, neither of which is involved in the case at bar. Likewise, this factual situation in the instant case does not involve a reservation of an interest by the person conveying the subject property, as occurred in *People ex rel. Department of Public Works & Buildings v. Mokres* (1974), 28 Ill. App. 3d 422, 328 N.E.2d 357.

■■ The plaintiffs contend that a demand would have been unavailing since the city could not possibly have proceeded with the program in view of the fact that the State had taken control of the program and was in the sole position to complete the connection for the 1½-mile stretch to the expressway.

Under such circumstances, in view of the fact that the State had assumed control of the project during the five-year period and prior to the expiration of five years from the date of the agreement, it appears that a supervening impossibility of performance, not permanent in nature, is involved in the case. Under such circumstances, equitable considerations would require that the city be relieved of its obligation on the basis of impossibility of performance, but be required, if there is a change in the impossibility of performance situation, to do what is required to cause completion of the construction and connection to the expressway. It is clear that the city has sought to do this and continues to do so. While the parties have not alluded specifically to the impossibility of performance by the city, this circumstance operates to relieve the city of an obligation to perform a function rendered impossible by the State. The "takeover" by the State was wholly unforeseeable and not in any manner the fault of the city. Courts now grant relief to parties involved in this situation by discharging promisor of his obligation rendered impossible to perform where a supervening impossibility of performance occurs. The city of Rock Island is thus relieved of its obligation to complete the connection within the five-year period. See Restatement of Contracts §§457, 462 (temporary impossibilities) (1932), and 17 Am. Jur. 2d *Contracts* §408, at 856-57 (1964).

Where equitable considerations are involved, as in the instant case, such equities must in fact apply so far as the parties are concerned on the basis of the facts in the instant case disclosing a supervening impossibility of performance, not permanent in nature. Under the facts and

circumstances in this case, it appears that the city is still attempting to cause completion of the roadway connecting to the Centennial Expressway. The city has also caused completion of the construction of the portion of the road covered by the right-of-way and is, and has been, as admitted by the plaintiff S. Wallace Moffitt in testifying, constantly attempting to have the State complete the project to connect to the expressway. The city has undertaken substantial obligations, also, to bring water and sewer connections to the property of plaintiffs.

In view of all the facts and circumstances, we conclude that the trial court improperly directed a reconveyance of the right-of-way property and a direction to institute condemnation proceedings as to said property. On the basis of the record, the connection of 92d Avenue to the Centennial Expressway will be completed when the State obtains funding for such purposes. Where impossibility of performance intervenes, as here, the parties are discharged as to the specific obligations rendered impossible of performance (by the city obligor).

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is reversed and the judgment entered therein purporting to set aside the right-of-way deed and ordering defendant to institute condemnation proceedings is vacated.

Reversed and judgment vacated.

STOUDER, P. J., and SCOTT, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE ALLOY delivered the opinion of the court:

The appellees in the above-entitled case, in a petition for rehearing, have suggested that the doctrine of impossibility of performance should not be applied in the instant case on the basis that there was an alternative performance which has not become impossible, *i.e.*, reconveyance of the right-of-way premises to the plaintiffs and cite 17 Am. Jur. 2d *Contracts* §422 (1964), relating to impossibility of performing alternative promise. In that section, it is also stated:

> "It has been said that it is impossible to lay down any universal rule as to whether the impossibility of performing one of two promises in the disjunctive excuses nonperformance of the other, but that the principle to be applied in each case must depend on the intention of the parties, to be ascertained from the nature and circumstances of the transaction and the terms of the agreement."

The facts and circumstances in the instant case clearly show that this principle is not applicable under the facts in the instant case and the

conduct of the parties as shown in the record. The promises on the part of the city of Rock Island in the instant case were not alternative promises, but were several, mutually supportive in nature, and involved rezoning of a tract of real estate owned by the plaintiffs Moffit, most of which was not involved in, but adjoins, the right-of-way premises conveyed. The city also agreed as part of the agreement, notably, to construct water and sewer connections to the property of plaintiffs, and to build a fence around the right-of-way premises, as well as to construct the road, to which we have referred in the course of the opinion.

The city of Rock Island has substantially completed these expressed obligations insofar as it was able to do so, including the construction of the road to a point where the State of Illinois has assumed control of completion to connect to another roadway. The bringing of the sewer and water ready for connections to be made to the plaintiffs' land at points to be designated by the plaintiffs has been completed. The rezoning for plaintiffs and the construction of the fence have also been completed. The only reason the roadway was not actually connected to the Centennial Expressway results from the fact that the State had taken over the construction of such connection. The State, apparently, has not completed it for the reason that specific money has not as yet been appropriated for such completion by the legislature.

There are, and will be, as shown by the record, substantial benefits to the plaintiffs through the water and sewer connections which plaintiffs maintain the city is required to provide for plaintiffs as part of the understanding between the parties. The city does not dispute this obligation and recognizes it as a continuing obligation even though the cost of such connections has risen from an original $66,000 to a total of approximately $200,000. As a result, the city of Rock Island has done all in its power to complete fully the obligations which it has undertaken with the plaintiffs. Plaintiffs continue to insist, as asserted by plaintiff, S. Wallace Moffitt, in his testimony upon the right of plaintiffs to have the sewer and water connections when and where designated by plaintiffs, irrespective of whether or when the roadway connection to the Centennial Expressway is finished by the State.

There is also nothing in the record showing that any of the parties indicated that there would be any difficulty in completing the construction of the roadway within the five-year period referred to, and the record shows that the city of Rock Island, did, in fact, pursue the construction to the fullest extent permissible.

Nothing in the record indicates that the clause about "return of the deed" to plaintiffs, was intended to assume anything other than that the city of Rock Island should undertake to construct the road and perform other obligations including furnishing water and sewer connections to

plaintiffs. None of the parties anticipated that the State would take over the connection of the road to the expressway after the city had substantially completed its obligations undertaken with the Moffitts. It would be entirely contrary to the understanding of the parties that, after completion of the road and making available water and sewer connections for the plaintiffs, the city would be required to deed the premises now occupied by 92nd Avenue and containing the road and other facilities. Equitable principles derived from the doctrine of impossibility of performance must, under the facts and actions of the parties in the instant case, relieve the city of an arbitrary action which would penalize the city, for the reason that the State had taken over the connection of the roadway, a circumstance wholly unanticipated by the parties to this action.

It is apparent from the contentions made by the plaintiffs that they have no objective in this cause other than to force a new condemnation proceeding so that the plaintiffs may obtain a larger sum than the $30,000 paid, at the same time the city is now required to spend approximately $200,000 to provide the premises of plaintiffs with sewer and water connections. It is clear from the record that neither of the parties anticipated that the State would intervene in this cause. The provision in the agreement, referring to the five-year time period, obviously was designed to cause the city to expedite performance on its undertaking within that period. That the city has done specifically, and it has completed all of its obligations to the extent possible. The fact that it was unable to complete the connection to the Centennial Expressway resulted wholly and entirely from action by the State which rendered performance on the part of defendant city to make the connection, impossible, even though the city expended substantial sums on completion of the roadway across plaintiffs' property, on the right-of-way granted and paid for, as well as completion of all other parts of the agreement.

It is apparent from the record and the facts in the instant case that all the undertakings of the city were in conjunction with the construction of 92nd Avenue, the installation of sewer and water facilities, the construction of a fence around the right-of-way, and rezoning of plaintiffs' property. There was no alternative provision which could or would discharge the city of Rock Island from the obligations which were part of the agreement as between the city of Rock Island and the plaintiffs.

In applying equitable principles to the issue involved, it is clear that impossibility of performance has properly discharged the city of Rock Island of its obligation to complete the roadway connection within the five-year period, but does not discharge its obligation to make available

858

sewer and water connections. The fencing and rezoning arrangements, also involved in the agreement as between the plaintiffs and the city, were completed.

Plaintiffs in this case also raised on petition for rehearing, for the first time, on appeal, a contention that plaintiffs have been deprived of the constitutional rights to just compensation for the premises. Such issue was not raised previously and should not be considered on rehearing. Likewise, in view of the record in this case, that particular contention has no support in the record, since the understanding and agreement of the parties was made voluntarily and for consideration deemed adequate by the parties, and evidenced by an unconditional conveyance and other undertakings on the part of the city, as part of the consideration for the right-of-way land referred to in this case.

STOUDER, P. J., and SCOTT, J., concur.