RALPH MAMOLELLA *et al.*, Plaintiffs-Appellants, *v.* FIRST BANK OF OAK PARK, Trustee, *et al.*, Defendants.—(FRANK MAMOLELLA, JR., d/b/a Frank's West Side Auto Parts, *et al.*, Defendants-Appellees.)

First District (2nd Division)    No. 80-1727

Opinion filed June 16, 1981.

Richard L. Hoffman, of Skokie, for appellants.

Stanley Garber, of Chicago (Robert R. Retke and Jerome A. Siegan, of counsel), for appellee City of Chicago.

Roger F. Maritote & Law Offices, of Chicago (Philip S. Aimen, of counsel), for other appellees.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs Ralph and Maria Mamolella filed an action in the circuit court of Cook County, seeking to enjoin a purpresture. The purpresture was created when defendants Frank Mamolella, Jr., and Atomic Auto Recycling, Inc., fenced off and appropriated for their own use a portion of an alley belonging to the City of Chicago. The City, which took no action to abate the encroachment, was also joined as a defendant. At the close of plaintiffs' evidence, defendant City of Chicago's motion for a directed verdict was granted. At the conclusion of the bench trial, the trial court dismissed defendants Frank Mamolella, Jr., and Atomic Auto Recycling, Inc. Plaintiffs have appealed.

The events precipitating this lawsuit took place in one square block on the west side of Chicago. The block in question is bounded by 30th Street on the north, 31st Street on the south, Troy Street on the east, and Kedzie Avenue on the west. The block is bisected by a north-south alley. The east half of the block is occupied by Atomic Auto Recycling, Inc. The legal owner of the Atomic property is the Bank of Lyons, which holds the property as trustee. The Bank of Lyons was joined as a defendant in this action, but has defaulted and is not involved in the instant appeal.

The west half of the block in question is divided into 25 lots. Seventeen lots on the northern portion of the block are occupied by Frank's West Side Auto Parts, a business operated by Frank Mamolella, Jr. These 17 lots were formerly held by the First Bank of Oak Park as trustee, but, subsequent to the filing of this lawsuit, the First Bank conveyed the property. The bank was then dismissed as a defendant and is not involved in this appeal. On the southern boundary of Frank's West Side Auto Parts are 1½ lots owned by plaintiffs. A dram shop is situated on this property.

Prior to 1976, the large parcels occupied by Auto Parts and Atomic were completely fenced in, and the alley between the two businesses was open. In 1976, Auto Parts and Atomic removed the portion of their fences adjoining the alley, and erected gates across the alley near both ends of Auto Parts' property. As a result, Auto Parts' and Atomic's properties were fenced together as a single parcel, and the alley between the two businesses was closed to public use. The gates are open during business hours and are closed and locked at night, but the alley has been filled with car parts and debris and is therefore impassable to ordinary vehicles at all times. The condition of the alley was reflected in photographs that were introduced at trial and made part of the record on appeal.

Plaintiffs' complaint prays for an injunction against the purpresture. The term purpresture—from the French, *pourprise*, signifying "enclosure"—has been defined by Blackstone:

> "Where there is a house erected, or an inclosure made, upon any part of the King's demesnes, or of a highway, or common street, or public water, or such like public things, it is properly called a *purpresture*." (4 W. Blackstone, Commentaries *167.)

Though a purpresture is akin to a public nuisance, the two are not identical. (See *Revell v. People* (1898), 177 Ill. 468, 480, 482-83, 52 N.E. 1052; *Cobb v. Commissioners of Lincoln Park* (1903), 202 Ill. 427, 433, 67 N.E. 5.) Many public nuisances are not purpresture, and a purpresture may be enjoined even though it does not amount to a nuisance. See *Revell*, at 482-83.

■■ The primary issue in the instant case is plaintiffs' standing to seek the injunction. Defendants have cited a long list of cases relating the familiar rule that a private person has no standing to abate a public nuisance unless the plaintiff has suffered some damage different in degree and kind from that suffered by the general public. (See, *e.g., McDonald v. English* (1877), 85 Ill. 232, 236; *Chicago General Ry. Co. v. Chicago, Burlington & Quincy R.R. Co.* (1899), 181 Ill. 605, 610, 54 N.E. 1026.) Plaintiffs contend that this rule does not apply to purpresture. A review of the authorities suggests that the distinction drawn by plaintiffs is unsound. Cases in this State, whether mentioning "purpresture" by name or merely describing

facts that constitute a purpresture, have uniformly held that an action to enjoin a purpresture is properly brought by the sovereign, unless the plaintiff can show a special injury resulting from the purpresture. (See, *e.g., Revell*, at 480-83 (citing numerous authorities to the effect that the proper remedy for a purpresture is an information of intrusion or a bill in equity by the attorney general); *Richeson v. Richeson* (1881), 8 Ill. App. 204, 207-08 (referring to facts that describe a purpresture, without so denominating the obstruction); see also *Green v. Oakes* (1855), 17 Ill. 249, 251; *Grant v. Defenbaugh* (1900), 91 Ill. App. 618, 619-20.) A uniform rule for purprestures and public nuisances is also supported by logic, since none of the factors that distinguish a purpresture from a public nuisance suggests that private persons have a greater need to seek abatement of a purpresture.

■■ Plaintiffs herein have made no attempt to claim an injury different from that visited upon the general public by Auto Parts' and Atomic's usurpation of the alley. In fact, plaintiffs rely solely on the injury to the general public in supporting their claim for relief. Plaintiffs argue that our supreme court's decision in *Paepcke v. Public Building Com.* (1970), 46 Ill. 2d 330, 263 N.E.2d 11, authorizes their action as taxpayers to enforce a public trust. In *Paepcke*, the court overruled earlier opinions which held that a taxpayer has no standing to enjoin a misuse of property held in trust for the public unless he can show a special injury, distinct from the injury to the general public. (*Paepcke*, at 341.) The court stated, "If the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it." *Paepcke*, at 341.

It is not at all clear, however, that the "public trust doctrine" should be applied to the instant case. The court in *Paepcke* noted that the public trust doctrine was developed by the United States Supreme Court in *Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 36 L. Ed. 1018, 13 S. Ct. 110. (See *Paepcke*, at 336.) In that case, the Supreme Court found that the navigable waters in Chicago's harbor were held by the State in trust for the public. (*Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 452-53, 36 L. Ed. 1018, 1042-43, 13 S. Ct. 110, 117-18.) The Supreme Court also observed that the title to these navigable waters was different in character from the State's title to other public lands (*Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 452, 36 L. Ed. 1018, 1042, 13 S. Ct. 110, 117-18), and that, unlike ordinary land that the State held for sale, the navigable waterways were held in an inalienable public trust. (See (*Illinois Central R.R. Co. v. Illinois* (1892) 146 U.S. 387, 455, 36 L. Ed. 1018, 1043, 13 S. Ct. 110, 119.) There can be no doubt that the Chicago lakefront has great value to the people of the State of Illinois. (See (*Illinois Central R.R. Co. v. Illinois* (1892), 146 U.S. 387, 454, 36 L. Ed. 1018, 1043,

13 S. Ct. 110, 118.) Similarly, the public has a strong interest in the preservation of public parks, such as those involved in the *Paepcke* case. (See also *Sierra Club v. Morton* (1972), 405 U.S. 727, 741, 31 L. Ed. 2d 636, 647, 92 S. Ct. 1361, 1369 (Douglas, J., dissenting (involving a national forest area)).) We question, however, whether a portion of an alley adjoining an automobile junkyard presents an appropriate case for invocation of the public trust doctrine.[1] Plaintiffs cite section 3 of the Plat Act, which states that a platted and dedicated street or alley in a city "shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended." (Ill. Rev. Stat. 1979, ch. 109, par. 3.) Nevertheless, the fact that there may be a "trust" does not clarify to whom the "beneficiaries" may look for enforcement. In the major public trust doctrine cases (*Illinois Central, Paepcke,* and *Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612), the plaintiffs sued the putative "trustees"—governmental bodies or officials. Since the city of Chicago is the trustee of the public lands it holds in trust, the city, and not the other parties defendant, would be the only properly joined defendant.

■■ Without deciding whether the public trust doctrine applies to the instant case, we prefer to rely on another theory. Plaintiffs complain of the obstruction of a public way. Illinois courts have long held that an action for *mandamus* will lie to compel a municipality to discharge its duty to remove purprestures and obstructions from public streets. (See, *e.g., People ex rel. Faulkner v. Harris* (1903), 203 Ill. 272, 277, 67 N.E. 785; *People ex rel. Jeffrey v. Murphy* (1929), 254 Ill. App. 109, 114; *People ex rel. Davidson v. City of Danville* (1926), 242 Ill. App. 472, 479.) In such an action, it is not necessary for the plaintiff to show that he has a particular injury or an interest in the result of the suit. (See *Faulkner,* at 277.) The action for *mandamus* is based on the municipality's duty to keep public ways unobstructed and in reasonably safe condition. (See *Jeffrey,* at 114; *cf. Snyder v. City of Mt. Pulaski* (1898), 176 Ill. 397, 402, 52 N.E. 62 (city holds streets in trust for the public and has no power to grant an easement for private use).) While it is true that plaintiffs did not frame their complaint as an action for *mandamus,* they did join the city of Chicago as a defendant and, in their prayer for relief, demanded that the city enforce its rights with respect to the subject alley. The Civil Practice Act states that pleadings should be construed liberally, with a view to doing substantial justice between the parties. (Ill. Rev. Stat. 1979, ch. 110, par.

---

[1] The *Paepcke* case dealt with a private plaintiff's standing to enjoin the transfer of park land to the Chicago Board of Education. Other public trust doctrine cases have also originated in the government's attempt to sell public lands. (See *Illinois Central,* 146 U.S. 387, 460, 36 L. Ed. 1018, 1045, 13 S. Ct. 110, 121; *Droste v. Kerner* (1966), 34 Ill. 2d 495, 497, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612.) When the alleged fiduciary breach is mere inactivity, the public trust doctrine may be inapplicable.

33(3).) It cannot be said that defendant city of Chicago was not reasonably informed of the claim, since the relief sought by plaintiffs is substantially similar to that which could be afforded in a *mandamus* action. (*Cf.* Ill. Rev. Stat. 1979, ch. 110, par. 42(2) (no pleading is bad in substance which reasonably informs the opposing party of the nature of the claim or defense).) Accordingly, plaintiffs' complaint to enjoin the purpresture may properly be read as an action for a *mandamus* to compel the city to remove the purpresture. Defendants argue that plaintiffs were required to make a formal demand on the city before filing their action. While the general rule is that a *mandamus* complaint is defective if it does not allege a prior demand on the municipality (see *Moffitt v. City of Rock Island* (1979), 77 Ill. App. 3d 850, 853, 397 N.E.2d 457), this rule applies when the plaintiff is asserting private rights against the governmental entity. When the duties sought to be enforced are strictly of a public nature, a prior demand is not necessary. *People ex rel. Housing Authority v. Hursey* (1956), 7 Ill. 2d 537, 545, 131 N.E.2d 483.

In the case at bar, the trial court granted defendant city of Chicago's motion for a directed verdict. On appeal from a directed verdict, the reviewing court examines the evidence to determine whether, as a matter of law, there is evidence in the record to prove the essential elements of the plaintiff's case. (See *Zank v. Chicago, Rock Island & Pacific R.R. Co.* (1959), 17 Ill. 2d 473, 476, 161 N.E.2d 848.) The court below found that the public was denied access to a dedicated alley owned by the city of Chicago. In light of the cases cited above, we find that plaintiffs have set out the elements of an action for *mandamus*, and the trial court's order was therefore erroneous. *Cf. Seidschlag v. Town of Antioch* (1904), 207 Ill. 280, 283, 69 N.E. 949 (in town's action against the creator of a purpresture, motion for directed verdict was properly denied where evidence showed that the highway in question was dedicated to the public, and that there was a fence across the highway).

In consideration of the foregoing, the trial court's judgment in favor of defendants Frank Mamolella and Atomic is affirmed, the directed verdict in favor of defendant city of Chicago is reversed, and the cause is remanded for further proceedings with respect to plaintiffs' action against the city of Chicago.

Affirmed in part; reversed in part; remanded.

HARTMAN, P. J., and DOWNING, J., concur.