WATERFRONT ESTATES DEVELOPMENT, INC., Plaintiff-Appellant, v. THE CITY OF PALOS HILLS *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 1—90—3502, 1—90—3542 cons.

Opinion filed June 15, 1992.—Rehearing denied August 26, 1992.

Coffield, Ungaretti, Harris & Slavin, of Chicago (J. Timothy Eaton and Daniel P. Albers, of counsel), for appellant.

Walsh, Neville, Pappas & Mahoney, of Chicago (Linda M. Mahalko and George Pappas, of counsel), for appellees City of Palos Hills, City Council of City of Palos Hills, and Appearance Commission of City of Palos Hills.

Sosin & Schuster, Ltd., of Alsip (Naomi H. Schuster, of counsel), for other appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Waterfront Estates Development, Inc. (WED), appeals an opinion and order of the circuit court of Cook County denying WED's motion for judgment on the pleadings on counts I and II of WED's complaint for a declaratory judgment. These counts sought a declaration that an ordinance regulating the external appearance of certain property and establishing the defendant appearance commission (Commission) of defendant City of Palos Hills (City) was unconstitutional.[1] For the reasons which follow, we reverse and remand the case for proceedings consistent with this opinion.

The record indicates that on April 5, 1990, WED filed a complaint for declaratory judgment and administrative review against the City in the circuit court of Cook County. On July 2, 1990, the City, city council and Commission filed an answer admitting certain allegations of WED's complaint. The following facts are undisputed, based on the pleadings in this case.

In 1989, the City passed an ordinance known as the "Palos Hills Appearance Regulation" (PHAR). The PHAR creates an Appearance

---

[1]Other defendants include the city council and individuals named as "objectors." For the sake of brevity, this opinion will refer to "defendants" collectively.

Commission, which has the power to hold hearings on the issuance of certificates of appropriateness ("Certificates") of external appearance in connection with applications for building permits. The PHAR provides that no building permit may issue for any development subject to the PHAR until such a Certificate is issued.

WED is the legal owner of certain real property located in the City. WED planned to build two three-story condominium units on this property. Before January 30, 1990, WED submitted a set of plans for these condominiums to the City for zoning approval, building permit approval and external appearance approval. The plans met all applicable zoning and building code requirements.

The Commission held hearings on WED's application for a Certificate on December 12, 1989, January 30, 1990, February 6, 1990, and February 12, 1990. In response to the stated concerns of the Commission, WED submitted an amended set of plans that met City zoning and building code requirements. On February 12, 1990, the Commission recommended denying WED's application due to incompatibility with existing development immediately adjacent to the proposed project, height of the proposed buildings and architectural design.

On March 8, 1990, WED presented its original and amended applications before the city council for approval. On March 15, 1990, the city council, acting on the Commission's recommendation, denied WED's applications. On March 19, 1990, WED submitted its plans to the City's Department of Buildings for approval, which was denied because WED did not have a Certificate.

On July 13, 1990, WED moved for judgment on the pleadings on counts I and II of its complaint. Count I sought a declaration that the PHAR was unconstitutionally vague and unconstitutionally delegated legislative power to the Commission. Count II sought a declaration that the PHAR unconstitutionally permits the rejection of applications based on aesthetic reasons alone. Both counts sought a declaration that WED's application met all applicable zoning and building code requirements and an order requiring the City to issue building permits to WED.

On September 5, 1990, the trial court heard argument on WED's motion. On November 7, 1990, the circuit court issued an opinion denying judgment on the pleadings as to counts I and II of the complaint. On December 7, 1990, the trial court granted WED's motion to dismiss count III, which sought declaratory relief, and count IV, which sought administrative review, without prejudice; thus, these counts are not at issue in this appeal. WED filed a notice of appeal regarding counts I and II only on December 7, 1990.

I

Initially, the City, city council and Commission contend that WED lacks standing to challenge the constitutionality of the PHAR. The standing doctrine is jurisdictional in nature. (See *Dilanjian Taxi Services, Inc. v. City of Chicago* (1990), 203 Ill. App. 3d 300, 303, 560 N.E.2d 1195, 1197.) Accordingly, this issue should be resolved before turning to the merits. (See *Mar Cement, Inc. v. Diorio Builders, Inc.* (1987), 153 Ill. App. 3d 798, 800, 506 N.E.2d 381, 383.) Although questions of standing are best considered in the context of summary judgment, such questions may be addressed in the context of judgment on the pleadings. *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575.

■ Generally, in order to have standing to challenge an ordinance, a plaintiff must have sustained, or be in immediate danger of sustaining, a direct injury resulting from enforcement of the ordinance. (See *Pre-School Owners Association of Illinois, Inc. v. Department of Children & Family Services* (1988), 119 Ill. 2d 268, 287, 518 N.E.2d 1018, 1027.) The City, city council and Commission contend that WED lacks standing because WED did not allege any economic injury resulting from the recommendation. However, economic injury is not the only type of injury that may support standing; for example, a real estate developer has standing to assert its right to be free of arbitrary or irrational zoning actions regarding a particular project. (*Village of Arlington Heights v. Metropolitan Housing Development Corp.* (1977), 429 U.S. 252, 262-63, 50 L. Ed. 2d 450, 462-63, 97 S. Ct. 555, 562.) Similarly, WED may assert an injury to its right to be free of vague or irrational appearance regulations.

■ Moreover, in an action for a declaratory judgment, there need only be an "actual controversy" between adverse parties and the party seeking the declaration must possess a personal claim, status or right capable of being affected by the grant of declaratory relief. (*Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 343, 546 N.E.2d 651, 654.) The "actual controversy" rule does not require that the party seeking relief show an actual injury; it is sufficient to show that the underlying facts are not premature or moot. (*Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 214, 475 N.E.2d 223, 226-27.) Such is the case here.

II

■ Turning to the merits, we note that this appeal concerns a motion for judgment on the pleadings (See Ill. Rev. Stat. 1989, ch.

110, par. 2—615(e)), which is similar to a motion for summary judgment insofar as both suggest that no material issue of fact exists. Judgment on the pleadings, however, must rely on the allegations of the complaint to establish the absence of material fact, whereas summary judgment may rely on affidavits and other documents. In addition, the well-pleaded allegations of the *nonmoving* party and inferences therefrom are taken as true. This court may review the question of whether an issue of material fact existed and, if not, whether the motion was properly granted or denied. See *Mitchell v. Waddell* (1989), 189 Ill. App. 3d 179, 182, 544 N.E.2d 1261, 1262-63.

In this case, neither party argues that there were genuine issues of material fact. We therefore turn to the issue of whether the trial court erred in denying WED's motion. In this case, WED challenges the constitutionality of the PHAR in three ways: (1) as an unconstitutional delegation of legislative power; (2) as unconstitutionally vague and arbitrary; and (3) as not rationally related to the public health, safety or welfare.

### III

■ When a legislative body grants an administrative agency discretionary authority to act, it must provide intelligible standards to guide the agency in the exercise of that authority. (*Abatron, Inc. v. Department of Labor* (1987), 162 Ill. App. 3d 697, 701, 515 N.E.2d 1336, 1339.) In contrast, when final approval of an administrative act rests with the legislative body, there is no delegation problem. (*City of Chicago v. State & Municipal Teamsters* (1984), 127 Ill. App. 3d 328, 339, 468 N.E.2d 1268, 1276.) Accordingly, when an administrative body acts in a merely advisory capacity, constitutional standards need not be met. (See *Pacesetter Homes, Inc. v. Village of Olympia Fields* (1968), 104 Ill. App. 2d 218, 224-25, 244 N.E.2d 369, 372.) Whether an administrative function is advisory or declaratory is judged by the nature of the act itself; the body's title or characterization of its function is not controlling. *Cf. R.S.T. Builders, Inc. v. Village of Bolingbrook* (1986), 141 Ill. App. 3d 41, 44, 489 N.E.2d 1151, 1153 (appearance review committee performed declaratory function, despite village's argument to the contrary); *Pacesetter Homes,* 104 Ill. App. 2d at 224, 244 N.E.2d at 372 (architectural advisory committee performed declaratory function).

In *Pacesetter Homes,* the architectural advisory committee's approval of a permit was final, and the committee's denial of a permit was final unless an applicant appealed to the village board. (*Pacesetter Homes,* 104 Ill. App. 2d at 224, 244 N.E.2d at 372.) In *R.S.T. Build-*

*ers,* the appearance review committee's decisions were also binding unless appealed; moreover, the ordinance in that case provided that the committee would review and "approve" proposed development. *(R.S.T. Builders,* 141 Ill. App. 3d at 44, 489 N.E.2d at 1153.) In both cases, this court held that the administrative body performed a declaratory function. In this case, the trial court's opinion does not refer to either of these cases, though the record shows that WED cited them.

Defendants maintain that the Commission performs an advisory function, relying on the following provision of the PHAR:

"*SECTION 14. Approval by Mayor and City Council.* The Appearance Commission is an advisory commission only. All rulings of the Commission shall be submitted to the Mayor and City Council for final decision. The Commission shall file a transcript of the proceedings along with its findings with the Mayor and City Council on or before fifteen (15) days after it makes its decision. With or without a hearing but by a majority vote, the Mayor and City Council may overrule, approve, modify or amend, wholly or in part, the Commission's findings."

WED cites other sections of the PHAR in support of its argument:

"*SECTION 10. Regulatory Powers of Commission Over External Architectural Features of Buildings and Structures.*

(a) No building or other permit, otherwise required under the ordinances of the City, for the *** construction *** of any building or structure in a multiple dwelling *** zoning district shall be issued by the Building Commissioner unless a Certificate of Appropriateness has been granted by the Appearance Commission ***.

(b) *Certificate of Appropriateness—Preliminary Consideration.* The Appearance Commission shall, at the written request of a prospective applicant ***, give consideration to preliminary exterior drawings *** and materials pertaining to a specific project before a formal application is filed, and shall provide such advice *** and recommendations on matters pertaining to aesthetics as it may deem necessary to guide the prospective applicant in the development of a plan which would comply with the requirements and purposes of this Ordinance. The Commission shall act in an advisory capacity only with regard to preliminary plans ***, and shall not participate in the development of the basic concept, plans or drawings. All hearings on preliminary plans are to be public and held in accordance with the provisions and requirements provided for in Section 14 (Final Hearings). The Commission shall issue a

preliminary approval of the Certificate of Appropriateness upon determining the preliminary *** materials to be appropriate and compatible with the character of the immediate neighborhood and upon determining that the objective of this Ordinance has been satisfied. Approval will be irrevocable and the issuance of the Certificate of Appropriateness shall be mandatory upon application, unless the final presentation does not comply in all respects with the preliminary presentation upon which the preliminary approval was based.

\* \* \*

*SECTION 12. Action of Appearance Commission.* *** The Commission shall make its decision within fifteen (15) days after the hearing is closed and shall issue to the Building Commissioner a Certificate of Appropriateness, unless the Commission finds that the said plan does not conform to this Ordinance and that the proposed building or structure will be inappropriate to, or incompatible with, the character of the surrounding neighborhood and cause substantial depreciation in property values *** ."

When construing an ordinance, a court should consider each section of an ordinance in connection with every other section, rather than isolating sections. (See *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318, 547 N.E.2d 437, 443.) Sections 8(d) and 10(a) of the PHAR indicate that it is the Commission that grants or denies Certificates. Section 10(b) indicates that preliminary hearings are to be public and "held in accordance with the provisions and requirements provided for in Section 14 (Final Hearings)." Yet section 14, while referring to a "final decision," states that the mayor and city council may act with or without a hearing. In addition, it is section 11 of the PHAR, rather than section 14, that is entitled "Certificate of Appropriateness—Final Hearings." Section 11 outlines the procedure of the Commission without mentioning the mayor or the city council. Section 10(b) also provides that if a proposed project complies in every respect with a plan for which preliminary approval was given by the Commission, approval of the project will be irrevocable and issuance of a Certificate shall be mandatory. Section 12 requires the Commission to issue a Certificate unless certain conditions occur.

Given the language of the PHAR as a whole, we hold that the Commission performed a declaratory function in granting or denying Certificates. The sole contrary section of the PHAR is section 14. However, although section 14 is entitled "Approval by Mayor and

City Council" and states that the Commission's decisions "shall be submitted to the Mayor and City Council for final decision," the plain language of section 14 does not require the mayor and city council to take any action whatsoever.

Defendants argue that there is no delegation problem so long as the administrative body is required to submit its decisions to the legislative body for a final determination. (See *Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 187, 166 N.E.2d 601, 605.) The argument is not persuasive for three reasons. First, section 14 of the PHAR includes the mayor in determining whether a majority has voted to alter a Commission ruling. The City, city council and Commission conceded at oral argument that the mayor is an executive official. The inclusion of the mayor in section 14 therefore means that the final approval of those rulings is not actually left to the legislative body, as defendants contend. Rather, it is left to a body composed of the members of the city council *and* the mayor.

Second, section 14 may unconstitutionally delegate legislative power to an executive official because the PHAR provides no standards governing the mayor's vote.

Third, even if the mayor were a legislator, the cases defendants rely upon in this case (see *Pacesetter Homes*, 104 Ill. App. 2d at 225, 244 N.E.2d at 372, citing *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 137 N.E.2d 371, and *Village of Justice v. Jamieson* (1955), 7 Ill. App. 2d 113, 129 N.E.2d 269) are distinguishable. In *Petterson*, the legislative body was required by law to take action once it was satisfied with the work of the administrative body. (*Petterson*, 9 Ill. 2d at 248, 137 N.E.2d at 380.) The PHAR does not require similar action. In *Jamieson*, a statute required that a zoning board of appeals hold a hearing before a county board could amend zoning regulations. (*Jamieson*, 7 Ill. App. 2d at 119, 129 N.E.2d at 271.) In this case, the Commission determines whether an application complies with an existing ordinance, rather than issuing a recommendation as to whether an exception to or amendment of that ordinance is warranted.

As the Commission performs a declaratory function, this case is controlled by this court's previous decisions in *Pacesetter Homes* and *R.S.T. Builders*. In *Pacesetter Homes*, this court held that an ordinance requiring a committee to consider "excessive similarity, dissimilarity or inappropriateness in exterior design and appearance of property" in relation to nearby structures conferred unconstitutionally broad discretion on the committee. (*Pacesetter Homes*, 104 Ill. App. 2d at 220, 226, 244 N.E.2d at 370, 373.) In *R.S.T. Builders*, this court held that terms such as "harmonious conformance," "inappropriate

materials," "durable quality," "good proportions," "exposed accessories" and "monotony of design" were inadequate standards for an appearance review committee. *R.S.T. Builders*, 141 Ill. App. 3d at 44, 489 N.E.2d at 1154.

■ In this case, section 12 of the PHAR requires that the Commission issue a Certificate unless it finds that three conditions are met. The first condition, conformance with the PHAR, is circular. The second condition, inappropriateness or incompatibility with the surrounding neighborhood, uses precisely the sort of criteria held inadequate in *Pacesetter Homes* and *R.S.T. Builders*.[2] The third condition, causation of a substantial depreciation in property values, arguably may be valid (*cf. Neef v. City of Springfield* (1942), 380 Ill. 275, 280-81, 43 N.E.2d 947, 950 (considering depreciation in zoning context)), but cannot save the PHAR because the Commission must find that *all three* conditions are met in order to deny a Certificate.

In sum, the PHAR unconstitutionally delegates overbroad discretion to the Commission.

Furthermore, even if the Commission performed a merely advisory function, the PHAR criteria would be held unconstitutionally vague. A municipal ordinance is presumed valid. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 66, 349 N.E.2d 399, 412.) A party challenging an ordinance has the burden of proving its invalidity. (*Village of Glenview v. Velasquez* (1984), 123 Ill. App. 3d 806, 809, 463 N.E.2d 873, 875.) Although "we can never expect mathematical certainty from our language" (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300), an ordinance which is so vague that persons of common intelli-

---

[2]It should be noted that incompatibility may be a standard in other contexts. For example, the Municipal Code of 1961 provides that the zoning power of municipalities extends to the division of the municipality into districts and "to prohibit uses, buildings, or structures incompatible with the character of such districts." (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1(7).) However, the Municpal Code of 1961 also indicates the types of criteria which may be employed in the creation of different districts, *e.g.*, the use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces and so on. (*E.g.*, Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1(5).) Indeed, the Municipal Code of 1961 also grants express authority for the regulation of specified characteristics. (Ill. Rev. Stat. 1989, ch. 24, pars. 11—13—1(1), (2), (3), (4).) In contrast, the PHAR does not discuss the division of the City into different districts that have specified characteristics. Section 12 refers only to "the character of the surrounding neighborhood," a term which is undefined in the PHAR. We note that one reason WED's plans were rejected was height. The PHAR, however, provides no standard by which a commissioner (or anyone else) may determine whether a building is aesthetically "too tall" or "too short."

gence must necessarily guess at its meaning is unconstitutional. See *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 607, 37 L. Ed. 2d 830, 837, 93 S. Ct. 2908, 2913.

In this case, WED has amply demonstrated the vagueness of the PHAR criteria from the plain language of the ordinance itself. Defendants have offered no criteria by which a person of common intelligence may determine from the face of the PHAR whether a proposed project will be deemed "inappropriate" or "incompatible" to nearby property.

Defendants argue that the PHAR contains more specific criteria than those in section 12. For example, section 9(a) of the PHAR requires the Commission to consider the "external architectural features of proposed buildings as well as landscaping and site plans." Section 16 defines an "external architectural feature" as:

> "the architectural style and general arrangement of such portion of a building or structure as is designed to be open to view from a public street, place, or way, including the kind, color and texture of the building material. It incudes [*sic*] the types of widows [*sic*], doors, lights, attached or ground signs and other fixtures appurtenant to such portion which can be seen by the public."

*Pacesetter Homes*, however, held that consideration of features nearly identical to those quoted above does not adequately limit an appearance commission's discretion. (*Pacesetter Homes*, 104 Ill. App. 2d at 221-22, 244 N.E.2d at 370-71.) Nor do these provisions give adequate notice to those who must comply with the PHAR as to what is mandated. For example, the PHAR does not indicate what types or arrangements of windows are "inappropriate."

The City, the city council and the Commission argue in their brief that to require further specification is "absurd." These defendants state:

> "The types of windows, doors and signs compatible in one neighborhood are incompatible in another. It is impossible for the CITY to specify in the ordinance what parts of a building or structure shall be considered for each and every neighborhood, especially since neighborhood appearances are constantly changing over time."

As noted elsewhere in this opinion, the PHAR does not even attempt to define a "neighborhood." Moreover, the above-quoted portion of the governmental defendants' brief admits that what may be considered "compatible" or "incompatible" under this ordinance is "constantly changing." Defendants have provided no answer to the ques-

tion of how the Commission can exercise its power in a nonarbitrary, nondiscriminatory fashion under so-called standards which are constantly changing. Nor have defendants answered the question of how those subject to the PHAR, such as WED, are to comply with constantly changing standards.

Indeed, defendants' arguments that the PHAR is not unconstitutionally vague appear to be limited to the presumption of constitutionality, the invocation of the standard of review and the bare assertion that the criteria of the PHAR meet that standard. The written opinion of the trial court determined that the PHAR was related to the public health, safety and welfare and inferred from that conclusion that the PHAR is not vague. However, the issue of whether the ordinance has a rational basis (an issue that this court need not reach in this case) is distinct from the issue of whether the ordinance is vague. Thus, defendants' arguments do not alter our conclusion that the PHAR criteria are unconstitutionally vague.

## IV

■ Given this conclusion, we turn to consider an appropriate remedy. WED argues that this court should order the City to issue building permits to WED without a remand. WED relies on *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406, which involves *mandamus* relief. *Mandamus* is an extraordinary remedy and the party seeking the writ must show a clear legal right to the relief requested. (*Machinis v. Board of Election Commissioners* (1987), 164 Ill. App. 3d 763, 518 N.E.2d 270; *Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932.) Generally, a plaintiff seeking *mandamus* must show: (1) a clear right to have the requested act performed; (2) every material fact necessary to demonstrate that clear right; (3) the requested act is the duty of the defendant to perform; (4) the act is within the defendant's power and authority; and (5) in the case of a private right, plaintiff's demand and defendant's refusal to act. (*People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 802, 340 N.E.2d 662, 665.) In order to compel the issuance of a building permit by *mandamus*, plaintiff must show that the refusal to issue the permit was improper and that plaintiff complied with the proper application procedures. See *People ex rel. Union National Bank v. City of Chicago* (1973), 12 Ill. App. 3d 50, 52, 297 N.E.2d 768, 769.

■ In this case, WED's complaint does not expressly seek *mandamus*. This court, however, may read the complaint as seeking *mandamus* relief because counts I and II seek the issuance of building

permits—relief which is substantially similar to *mandamus*. See *Mamolella v. First Bank* (1981), 97 Ill. App. 3d 579, 583, 423 N.E.2d 204, 207.

The record indicates that the answer filed by the City, city council and the Commission admits that WED's plans met all applicable building code and zoning requirements. The answer also admits that WED submitted its plans to the City's Department of Buildings, but that permits were denied because WED lacked a Certificate.

Nevertheless, based on the allegations of WED's complaint that are admitted by the City, city council and Commission in their answer, it remains unclear whether all of the prerequisites for the issuance of *mandamus* have been met. Thus, the issue is better resolved by the trial court on remand.

For all the aforementioned reasons, we reverse the decision of the circuit court of Cook County and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY, P.J., and MANNING, J., concur.