BRUCE BRUNSFELD, Plaintiff-Appellant, *v.* MINEOLA HOTEL AND RESTAURANT, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 82—3011

Opinion filed November 10, 1983.

338

Harvey L. Walner & Associates, Ltd., of Chicago (Lawrence Schlam, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton and William F. Haley, of counsel), for appellee Mineola Hotel and Restaurant, Inc.

Roderick Bergin, of Chicago (Harvey N. Levin, of counsel), for appellee Mineola Marine, Inc.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from a summary judgment for defendants in a personal injury action. The sole question for review is the propriety of that judgment.

Plaintiff was injured while operating a snowmobile on the frozen surface of Fox Lake, a public lake located in Illinois. He alleges that the accident occurred when his snowmobile went over a snow embankment and became entangled in a rubber tire marking the outer edge of a plowed area of the ice used for racing motorcycles (the track). In his amended complaint, he asserts that defendants "caused, created and constructed" the track; that they had a duty thereafter to maintain the track in a reasonably safe condition and/or provide adequate warnings of its existence; and that their breach of these duties proximately caused his injuries. A subsequent amendment adds a count alleging that defendants' acts created a public nuisance, and that this nuisance endangered public safety and directly caused his particular injuries.

The pleadings, affidavits, and depositions of record establish that defendant Mineola Marine, Inc. (Marine), is a foreign corporation engaged in boat maintenance and storage as well as the rental of docking space on Fox Lake during the summer months. Peter Jakstas is the president of Marine, and the land on which its business is situated is leased from Emily Jakstas, Peter's mother. Mineola Hotel and Restaurant, Inc. (the hotel), is an Illinois corporation engaged in the operation of a bar and restaurant located near the shoreline of Fox Lake. Emily Jakstas is the hotel's president, and Paul Jakstas (her son) is its secretary. Marine and the hotel are located on adjoining parcels of land. For a number of years, motorcycle racing has taken place on the ice of Fox Lake, in an area of the lake known as Mineola Bay.

Peter Jakstas stated in his deposition that from May through October, Marine places docks extending from the shoreline in front of its place of business into the waters of Fox Lake. From November

through April the docking materials, including rubber tires, are removed from the water and stored outdoors along the shore. On occasion, racers borrowed the tires to mark the inner edge of the track. Similarly, a plow-equipped jeep owned by Marine was borrowed occasionally by the racers to plow the track, but had not been so used for at least one month prior to plaintiff's accident. Once the track was cleared and the tires placed, it would remain that way from week to week, although races took place only on Sundays. Marine did not receive any payment for the use of its equipment, and the loan thereof was done as a favor, not to aid its business. Peter Jakstas further stated that he was one of the rescue workers called to aid plaintiff on the night in question, and that the accident occurred opposite the hotel several hundred yards from shore. He also averred that Marine never owned, leased, controlled, or held any rights in Fox Lake or any portions thereof; and that neither he nor any employee of Marine was involved in owning, designing, constructing, maintaining, supervising, or controlling the track, nor did they participate in promoting or supervising the activities thereon.

The affidavit of Emily Jakstas states that the hotel never owned, leased, controlled, or held any rights to Fox Lake or any portion thereof; that it did not own, lease, or control any equipment capable of creating the track; and that its employees and agents had never been involved in owning, designing, constructing, maintaining, supervising, or controlling the track nor participated in promoting or supervising the activities thereat.

Daniel Schmitt stated in a deposition that motorcycle races had been held on the ice on Sundays for at least 10 years, and that he had participated therein for six years. Prior to and at the time of the accident, the races were not formally organized events; whoever had a truck would plow the ice, and various racers would bring tires to mark the outer edges of the track, then remove the tires after racing was completed for the day. On occasions, racers and spectators would patronize the hotel's bar and restaurant before, during, and after the races, and the Jakstas were aware that the races were being held. During that time, racers would occasionally place money in a pot, and the day's winner would receive the proceeds. When the races became more organized in late 1978 or early 1979, a racing fee was charged and would be collected by participants, sometimes while sitting in the bar. Racers and spectators would park in the hotel's parking lot or a lot owned by an adjacent condominium association and would work on their motorcycles in the lots, if necessary. Access to the track was over land owned by the condominium association. The Jakstas never

told racers that they could not use the ice in front of the hotel for racing or that they could not use its premises while organizing the race. No one asked them to clean debris from the area, but they always did so and, to his knowledge, tires were always removed from the ice after racing was completed. On one occasion, he (Schmitt) placed a sign advertising a race on the wall inside the hotel's bar; Emily Jakstas allowed any organizations or individuals to put up signs advertising their activities.

Based on the pleadings, affidavits, and depositions, the trial court granted defendants' motion for summary judgment. A subsequent motion to vacate that order was denied, and this appeal followed.

OPINION

Summary judgment is proper only where the right of the moving party thereto is "clear, free from doubt, and determinable solely as a matter of law" (*Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 386, 430 N.E.2d 536, 539); that is, if the pleadings, depositions, exhibits, and affidavits of record, when construed most strongly against the movant (*Patel v. Burke* (1981), 102 Ill. App. 3d 554, 430 N.E.2d 162) reveal that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law (*Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 432 N.E.2d 1262). Thus, in ruling on a motion for summary judgment, the trial court looks beyond the pleadings of the parties; even where those pleadings seem to raise issues of fact, summary judgment is appropriate if those issues are not supported by evidentiary facts. *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.

With regard to count I of the complaint, alleging negligence, the trial court ruled that plaintiff had failed to establish any duty owed to him by defendants. Of course, the existence of a duty is an element of a cause of action for negligence (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267) and is a question of law to be determined by the trial court (*Laufenberg v. Golab* (1982), 108 Ill. App. 3d 133, 438 N.E.2d 1238). When the pleadings, depositions, and affidavits fail to establish an element of plaintiff's cause of action, summary judgment is proper. (See *Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill. App. 3d 532, 430 N.E.2d 145.) In the instant case, it is difficult to find the existence of any legal duty. The mishap occurred on public recreational lands several hundred yards from defendants' premises. There is no allegation that the property in question was the normal means of ingress and egress for defendants' businesses, and it appears that they did not create, construct, or maintain

the condition thereon which purportedly caused plaintiff's injuries. Nevertheless, we will examine the theories upon which plaintiff relies to establish the existence of a legal duty.

■ Plaintiff first contends that defendants voluntarily assumed a duty of care, relying on the well-established rule that "liability can arise from the negligent performance of a voluntary undertaking." (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769, 773.) He argues that assumption of a duty to him can be inferred from the facts that (a) both defendants knew of the existence of the track, the use of the lake by snowmobilers, and the potential danger posed by the track; (b) Marine knew that its tires were occasionally used by motorcyclists to warn snowmobilers; and (c) the hotel warned its customers to clear debris from the track and provided a place for its disposal.

We find plaintiff's arguments to be without merit. Even a casual reading of the authorities upon which he relies establishes that mere knowledge of a dangerous condition does not constitute assumption of a duty of care. (See, *e.g., Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396.) The underlying assumption in plaintiff's argument is that defendants had a duty to act on their knowledge; in effect, that they had a duty to assume a voluntary duty. Even if defendants did know of the danger posed to snowmobilers, a fact not established by this record, mere knowledge of a hazardous condition does not give rise to a duty to correct it where a defendant is not responsible for the existence of that condition. (*Cf. Hubbard v. Aetna Insurance Co.* (insurance company which discovered hazardous conditions during safety inspection and notified insured thereof not liable for insured's failure to remedy the condition); *Fugate v. Galvin* (1980), 84 Ill. App. 3d 573, 406 N.E.2d 19 (passenger who knew of driver's intoxicated condition not liable in negligence for failing to prevent him from operating vehicle).) Nor are we persuaded that the hotel assumed a duty by suggesting that its customers remove debris from the ice. The hotel had no right to control its customers' actions once they were off the premises and therefore had no duty to control that conduct.[1] See *Restatement (Second) of Torts* sec. 315 (1965); *Fugate v. Galvin.*

---

[1] Throughout his brief, plaintiff ascribes the hotel's actions to Marine and vice versa, based on his conclusory statement, unsupported by the record and not even alleged in the pleadings, that they are "owned and controlled by interlocking, closely held, 'family' corporations." We have searched this record in vain for evidence which would support plaintiff's assumption of fact in this regard. In the absence of that evidence, we shall consider them as separate corporations responsible only for their own actions.

■■ ▌ Plaintiff's alternative argument on this point is equally frivolous. He posits that "a foreseeably dangerous result of their business activities was the continuing unnatural condition on public lands which injured plaintiff." In support thereof, he cites numerous cases holding that businesses have a duty to provide a safe means of ingress and egress for their business invitees (*e.g., Cooley v. Makse* (1964), 46 Ill. App. 2d 25, 196 N.E.2d 396), and that an owner of land abutting a public sidewalk may be liable for a dangerous condition created by his use of the sidewalk for his own purposes (*e.g., McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369).

Here, it does not appear from the record that the surface of the lake was a means of ingress or egress to defendants' businesses; and, in any event, plaintiff was not a business invitee. Moreover, neither Marine nor the hotel created the condition which allegedly caused plaintiff's injury. Nevertheless, plaintiff makes the argument that "defendants, in the course of their business, have taken advantage of the frozen surface of Fox Lake for the special economic benefit and convenience of their abutting property by actively supporting the maintenance and use of the motorcycle racetrack." He points to the fact that "on some occasions" Marine's equipment was used to plow the ice and its tires were used to mark the track; however, he fails to explain how this was "an adjunct of" Marine's business operation, or how Marine "benefitted economically." The deposition of its president states that no economic benefit was received, and that the track had no connection with its business; plaintiff has not rebutted this assertion by showing any facts to the contrary. Moreover, there is nothing in this record to establish that Marine's equipment had been used at the time of plaintiff's injury or that his mishap was caused by any tire, let alone a tire provided by Marine.

Plaintiff proposes with regard to the hotel that it be held liable because it allowed the racers to patronize its bar and restaurant and use its parking lot. However, he does not cite, nor has our own research discovered, any case holding a defendant liable for the off-premises activities of its customers, which is essentially what plaintiff asks that we now hold. In determining whether some new legal duty should be created, we traditionally consider the probability or foreseeability of injury, "the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." (*Johnson v. Chicago Housing Authority* (1980), 92 Ill. App. 3d 301, 302, 416 N.E.2d 38, 39.) If we were to hold that places of business which benefit economically from the existence of a publicly owned rec-

reational facility in close proximity to their premises are liable for the off-premises actions of their customers in utilizing those facilities; then, to protect themselves, they would be forced to maintain the recreational area, to place appropriate warning signs, and to monitor and control the actions of all who used those public facilities. We do not believe that the law does or should impose such a heavy burden upon such places of business.

■ With regard to count II of plaintiff's complaint, he argues that the track was an actionable purpresture or public nuisance for either of which defendants were liable, and summary judgment as to that count was therefore improperly granted.

A purpresture is an encroachment upon public lands for a private use (*Hibbard, Spencer, Bartlett & Co. v. City of Chicago* (1898), 173 Ill. 91, 50 N.E. 256) which may be abated upon an action either by the sovereign (*Revell v. People* (1898), 177 Ill. 468, 52 N.E. 1052) or by an individual who can show a special injury not suffered by the public in general (*Mamolella v. First Bank* (1981), 97 Ill. App. 3d 579, 423 N.E.2d 204).

It appears from the above-cited cases that the only action authorized is one for abatement of the purpresture; in none of those cases was the cause of action one for damages. Moreover, assuming *arguendo* that an action for damages would lie, plaintiff has not established that defendants caused the encroachment in question. His sole argument concerning Marine is that it maintained a pier extending into Fox Lake during the summer. Even if that pier could be considered a purpresture, it was not in place at the time of plaintiff's injury, did not cause his injury, and is therefore totally irrelevant. With regard to the hotel, he contends that it allowed race participants and spectators to use its facilities, that this use "extended their business activities to encompass and exploit the weekly attraction of the motorcycle races," and that "[t]his continuous exploitation of the adjoining lake for business purposes constituted an encroachment." This argument is without merit. A purpresture is a physical thing; an enclosure or an obstruction placed on public lands (*Mamolella*)—here, the track. It is abundantly clear from the record that the hotel had nothing whatsoever to do with the placement of that track; it did not build it, maintain it, or control it. All that plaintiff's allegations establish is that the hotel served customers who walked in and placed an order; that it allowed those customers to use its parking facilities; and that it did not place any restrictions on what those customers talked about while on the premises or what they did off the premises. Those actions are not, by any stretch of the imagination, a physical obstruc-

tion of public lands.

■ It is apparently plaintiff's position that, but for these activities, the track would not have been placed where it was and he would not have been injured by it. However, there is no evidence in the record before us which even remotely tends to show that the track was located where it was because the hotel was willing to serve the racers food and drink. It is just as logical to assume from these facts that the racers placed the track in Mineola Bay because it was physically well-adapted to their sports activities, and they thereafter started patronizing the hotel because it was close to their chosen recreational area. For all of these reasons, we find that plaintiff's contention that a purpresture was created by defendants is unsupported by law, fact, or logic, and summary judgment thereon was therefore proper.

■ Finally, plaintiff contends that the track was an actionable public nuisance; however, once again, he points to no act, structure, or device within defendant's control which could constitute such a nuisance. The creator of the nuisance is liable therefor (*City of Chicago v. Stern* (1981), 96 Ill. App. 3d 264, 421 N.E.2d 260), as may be a person who continues or maintains a nuisance created by another (29 Ill. L. & Prac. *Nuisances* sec. 43 (1957)); but where it is not shown that a person created or continued a nuisance or that he owned, maintained, or controlled the premises on which it exists, such person has no responsibility therefor. (See *City of Chicago v. Stern; Maisenbach v. Buckner* (1971), 133 Ill. App. 2d 53, 272 N.E.2d 851.) The numerous cases cited by plaintiff are distinguishable, as in them the basis for nuisance liability was either the defendant's act, structure, or device.

■ Finally, plaintiff apparently acknowledges that the facts before us do not support a theory of liability based on nuisance, since he argues no facts in support of his contention. Instead, he asks us to remand this cause to give him "reasonable time" for discovery, asserting that he may still be able to prove that this track "may be held to flow from or be the responsibility of defendants' business activities." In the first place, we believe that the facts already before us establish precisely the contrary, as we discussed in regard to plaintiff's purpresture theory. In addition, plaintiff has had over four years in which to conduct discovery and develop his concept of the case. We realize that the count alleging nuisance was added late in the proceedings, apparently in an attempt to keep this lawsuit alive after the trial court found that he had not established any duty on the part of defendants which would support a cause of action in negligence. However, plaintiff never asked for an extension of time to conduct further discovery, nor did he indicate in any way to the trial court that further discovery

346

was necessary or desired. Under such circumstances, we reject his request to remand for further discovery.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

WILSON, P.J., and MEJDA, J., concur.