JAMES D. KIRK, Plaintiff-Appellant, v. MICHAEL REESE HOSPITAL AND MEDICAL CENTER *et al.*, Defendants-Appellees (Daniel McCarthy, Defendant).

First District (3rd Division) No. 81—2408

Opinion filed August 28, 1985.—Rehearing denied October 16, 1985.

McNAMARA, J., dissenting.

Andrew J. Horwitz & Associates, of Chicago (Andrew J. Horwitz, Michael Horwitz, and Dario Garibaldi, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago, for appellee Michael Reese Hospital and Medical Center.

Sweeney & Riman, Ltd., of Chicago, for appellee Irving H. Tracer.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Henry K. Fine.

Burditt & Calkins, of Chicago, for appellee E. R. Squibb & Sons, Inc.

Baker & McKenzie, of Chicago, for SmithKline Clinical Laboratories, Inc.

JUSTICE RIZZI delivered the opinion of the court:

This is a personal injury action. Plaintiff, James D. Kirk, appeals from the dismissal of five counts of his third amended complaint for failure to state a cause of action. Count I involves a negligence action against defendant Michael Reese Hospital and Medical Center; count II involves a medical negligence action against defendants Irving H. Tracer, M.D., and Henry K. Fine, M.D., both of whom are psychiatrists; count III involves a separate medical negligence action against defendant Tracer; count IV involves a product liability action against defendant Michael Reese Hospital and Medical Center and defendant E. R. Squibb & Sons, Inc.; and count V involves a product liability action against defendant Michael Reese Hospital and Medical Center and defendant SmithKline Clinical Laboratories, Inc. In count II, plaintiff alleges that Tracer acted as the agent of Fine. Count VI, which involves a negligence action against defendant Daniel McCarthy, is not involved in the appeal. We reverse the dismissals of the five counts and remand for further proceedings.

We assume the following facts to be true based upon a reading of the composite allegations in the five counts of the third amended complaint. On August 1, 1978, McCarthy was being treated as a patient at the hospital by the two doctors. The doctors ordered that McCarthy be given the prescription drug Prolixin Decanoate, manufactured by Squibb & Sons, and the prescription drug Thorazine, manufactured by SmithKline. Hospital personnel then injected McCarthy with Prolixin Decanoate and gave him Thorazine for oral consumption. On the same day, McCarthy was discharged from the hospital. He then consumed an alcoholic beverage and drove his automobile

with plaintiff as a passenger. The drugs Prolixin Decanoate and Thorazine diminished McCarthy's mental and physical abilities, which caused McCarthy to lose control of the automobile. As a result, the automobile hit a tree. Plaintiff suffered severe and permanent injuries in the occurrence.

The gist of plaintiff's actions is that the drug manufacturers failed to provide adequate warnings of the adverse effects of their drugs, and that the doctors and the hospital failed to warn their patient prior to his discharge from the hospital that the drugs would impair the patient's mental and physical abilities, although defendants knew or should have known of the adverse effects of the drugs.

Defendants argue separately that they were properly dismissed because they owed no duty to plaintiff. As we view the case, whether the separate defendants owed a duty to plaintiff can be discussed as a single issue.

■ The existence or nonexistence of a legal duty is a question of law to be determined by the court. This is so because the existence of a legal duty is not a palpable fact, but merely a legal conclusion that in certain generalized circumstances redress should be available to those who are injured as a proximate cause of either the acts or inactions of another. The broad factors to be considered in making this determination include (1) the foreseeability that the defendant's acts or inactions will result in injury to the plaintiff, (2) the magnitude of the burden of guarding against the injury and the consequences of placing that burden upon the defendant, and (3) the desirability in terms of public policy of imposing a duty on the defendant to guard against the risk that is involved. See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 356, 367 N.E.2d 1250, 1254; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, 618; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 29, 305 N.E.2d 535, 538, 539; *Meiher v. Brown* (1973), 54 Ill. 2d 539, 541, 544-45, 301 N.E.2d 307, 309-10; *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 105-06, 440 N.E.2d 253, 256.

■ With regard to the question of whether it was foreseeable that defendants' failure to warn[1] would result in injury to plaintiff, we apply a standard of objective reasonableness. Under this standard, it is not essential that defendants should have foreseen the precise hazard or exact consequences which resulted from a failure to warn, nor

---

[1]Since a duty to warn includes a duty to adequately warn (*Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 562, 390 N.E.2d 1214, 1230), when we refer to a failure to warn in the text, we implicitly include a failure to adequately warn.

is it essential that defendants should have foreseen the injuries to a specific person. A duty may exist to one who is unknown and remote in time and place. (See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357, 367 N.E.2d 1250, 1254-55; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380, 50 N.E.2d 497, 503; *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 103, 197 N.E. 578, 582; *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 107, 440 N.E.2d 253, 257.) With these considerations in mind, we believe that the event that occurred was sufficiently foreseeable for the doctors, hospital and drug manufacturers to have known that their failure to adequately warn of the adverse effects of the drugs would result in injury to the plaintiff or other members of the general public.

■■ ■ Defendants argue that what occurred in this case was not reasonably foreseeable because McCarthy's consumption of an alcoholic beverage and his negligent driving constitute superseding intervening causes of the occurrence. A superseding intervening cause is a subsequent independent action which breaks the causal relationship between the original wrong and the injury, and it, rather than the original wrong, causes the injury. However, the intervention of an independent action will not break a causal connection if the intervention of the independent action was itself reasonably foreseeable. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380-81, 50 N.E.2d 497, 503-04; *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 104, 197 N.E. 578, 583; *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 107, 440 N.E.2d 253, 257.) In the present case, McCarthy's consumption of an alcoholic beverage, the manner of his driving and plaintiff's presence in the automobile were all within the realm of reasonable foreseeability absent a pertinent warning by the respective defendants. Thus, defendants' argument on this point is without merit.

■ We next address the magnitude of the burden of guarding against an injury to a member of the general public because of a failure to adequately warn of the adverse effects of prescription drugs and the consequences of placing that burden upon doctors, hospitals and prescription drug manufacturers. The doctors and the hospital argue that they should not owe a duty to an injured party who is merely a member of the general public and not their patient, because the imposition of a duty to a nonpatient would unjustly render them liable to an indeterminate class. In this same regard, the drug manufacturers argue that a prescription drug manufacturer's duty to warn the medical profession does not cover third parties who do not use

the drugs.[2] We do not find defendants' arguments persuasive.

▇ Plainly, the fast pace at which new drugs are presently being introduced and utilized demands that the public be protected from their varying adverse effects. Thus, we believe that doctors and hospitals have a duty to warn their patients of the adverse effects of drugs, and drug manufactrurers have a duty to warn the medical profession of the adverse effects of their drugs, and that these duties implicitly extend to cover members of the public who may be injured as a proximate cause of a failure to adequately warn. Moreover, we believe that the imposition of such a duty in favor of the public is not an undue burden to place upon doctors, hospitals and drug manufacturers in light of the great risks that are involved to every member of the public. In a balancing test, the rights and burdens of the members of the public whose injuries are proximately caused by the failure of doctors, hospitals and drug manufacturers to adequately warn of the adverse effects of drugs substantially outweigh the added burden to doctors, hospitals and drug manufacturers to be fully responsible for their wrongdoing. Additionally, the imposition of a pertinent duty to warn that implicitly extends to cover the general public would not make doctors, hospitals or drug manufacturers any more liable to an indeterminate class than are those in other fields and professions when a member of the general public is injured as a proximate cause of their wrongful acts or inactions. Finally, nothing in the record demonstrates

---

[2]The adequacy of a prescription drug manufacturer's warnings is determined by taking into account all aspects of the warnings, including the content of the warnings and how and to whom the warnings are conveyed. As an example, a drug manufacturer may communicate product information to the medical profession in a number of ways: package inserts, the Physicians' Desk Reference, "Dear Doctor" letters and detailment. Ultimately, the sufficiency of the warnings is not resolved judicially by pointing to a single document or act, but remains a question to be resolved by the trier of fact in light of all the information provided by the manufacturer and all the information that it was reasonably possible to provide. (See *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 562, 390 N.E.2d 1214, 1230.) The trier of fact may consider warnings given by drug manufacturers to physicians to be adequate (*e.g., Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779, 784) or inadequate (*e.g., Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 563-65, 390 N.E.2d 1214, 1231-32). Also, with regard to oral contraceptives, the drug manufacturer may have a duty to warn the consumer. (*Stephens v. G.D. Searle & Co.* (E.D. Mich. 1985), 602 F. Supp. 379; *MacDonald v. Ortho Pharmaceutical Corp.* (Mass. 1985), 475 N.E.2d 65.) Here, since the counts against the drug manufacturers were dismissed because of a failure to state a cause of action (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), the factual question as to the adequacy of warnings that allegedly were included as package inserts or that may have been given by the drug manufacturers to the medical profession is not before us.

that there would be a *quid pro quo* for society in return for the absolution of doctors, hospitals or manufacturers from their responsibility to the public for their failure to warn of the adverse effects of drugs. We therefore see no reason to discriminate in favor of doctors, hospitals or drug manufacturers at the expense of innocent victims.

■■ ■ We next examine the public policy considerations which pertain in extending the duty to warn that is involved here to cover members of the general public. Defendants contend that such an extension of their duty to warn would discourage them from treating patients with medicines that would "help them the most" and that it would "thwart the recent advances in drug therapy." They also contend that it would open the door to limitless medical negligence suits by an infinite class of plaintiffs and that it would make them absolutely liable. These contentions miss the point.

The duty which is involved here simply requires a warning, not control or prevention. In this regard, we point out that the duty to warn would arise only if the doctors, hospitals or drug manufacturers know or should know of the adverse effects of a drug. The duty is plainly nonjudgmental. Moreover, we are speaking in this case only of a duty and not causation. Obviously, no defendant can be liable unless causation as well as breach of duty is proved. (See *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423-24, 328 N.E.2d 301, 305; *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 563, 390 N.E.2d 1214, 1230-31.) Also, we are mindful that in personal injury and wrongful death cases involving medical negligence, expert witnesses in the same profession or field as the defendant are necessary to hold the defendant liable. Thus, the liability of defendants in medical negligence cases must be substantiated by their own peers. (See, *e.g.*, Ill. Rev. Stat. 1983, ch. 110, pars. 2—622, 2—1013 through 2—1018 (eff. Aug. 15, 1985).) These are telling points which militate against defendants' specific contentions.

Generally, the desirability in terms of public policy of imposing or extending any duty relating to doctors, hospitals and drug manufacturers must be determined by balancing dichotomous public concerns. The problem is to balance the just claims of people who are injured as a proximate cause of medical negligence and related causes "against the public's claim not to be victimized by needlessly swollen medical costs." (Editorial, *Compromise on malpractice*, Chicago Tribune, June 8, 1985, sec. 1, at 10.) For the reasons that we have already discussed, we do not believe that extending the duty that is involved here to cover members of the general public will needlessly swell medical costs. Rather, we believe that the public interest requires that

members of the general public be entitled to full redress if they are injured as a proximate cause of the failure of doctors, hospitals or drug manufacturers to adequately warn of the adverse effects of drugs. Plainly, under a public policy analysis, concern for righteousness must be focused on the members of the public who are injured and suffer because of the medical negligence and related causes, rather than on the doctors, hospitals and drug manufacturers who commit the medical negligence and related wrongful acts that cause the injuries and suffering. The victims, not the wrongdoers, need protection. The wrongful acts must be curtailed, not the rights of the victims of the wrongful acts.

■■ The hospital makes the additional argument that it cannot be liable for negligence here because the administration of drugs involves the decision to treat a patient in a particular manner, which is a medical question entirely within the discretion of the treating doctor, and the doctors were "neither employed nor controlled by the hospital." This argument is misapplied, because the negligence count against the hospital involves the hospital's own negligence for failure to warn, rather than a claim that the medical treatment itself was improper.

■■ ■ Moreover, the old conception that a hospital does not undertake to treat the patient no longer reflects reality. Plainly, hospitals do far more than merely furnish an edifice for treatment. Rather, they regularly employ on a salaried basis a staff of physicians, nurses, pharmacists, technicians, and medical administrative professionals, and, not insignificantly, the costs for these personnel are factored into the amount that patients are charged by the hospital. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, 211 N.E.2d 253, 257.) Also, hospitals now advertise and promote the treatment and care that patients receive at their particular hospital (see, *e.g.*, Chicago Sun-Times, June 30, 1985, Medical Centers—Special Pullout Section), and it is not uncommon for members of the general public to choose a particular hospital for treatment and care simply on the basis of the reputation of the hospital itself. It follows that hospitals must assume certain responsibilities for the care and treatment of their patients. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, 211 N.E.2d 253, 257.) Within this context, we conclude that before a patient is discharged from a hospital, the hospital has a duty to warn the patient of the adverse effects of drugs that were administered by the hospital if the hospital knows or should know that the drugs will impair the patient's mental or physical abilities, or will be potentially dangerous in combination

with particular foods, beverages or other drugs.[3] A patient should not be discharged from a hospital under circumstances which make the patient unknowingly a potential danger to himself or herself, and the public at large, because of drugs administered by hospital personnel. Here, we should bear in mind that the patient is charged by the hospital for both the services of the hospital personnel who administered the drugs as well as for the drugs themselves[4] and that the duty arises only when the hospital knows or should know of the adverse effects of the drugs.

■■ We therefore conclude that each of the defendants owed a legal duty to the plaintiff as stated in this opinion.[5] Whether defendants breached their respective duties is to be determined by the trier of fact.

■■ ■ Next, the hospital makes the argument that it cannot be liable under the doctrine of strict liability for failure to warn of the adverse effects of drugs that it administers because it simply provides a service in that regard. The hospital's argument would have merit if this case involved injurious results of treatment (see *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 289, 415 N.E.2d 390, 393) or danger created by the medical decision to administer the drugs (see *Dubin v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 277, 281, 415 N.E.2d 350, 352), rather than the unreasonably dangerous condition of the drugs themselves if no warning of the adverse effects is given to the patient. (Compare *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 447-53, 266 N.E.2d 897, 899-902.) Here, all of the elements for a product liability action have been sufficiently alleged: the case involves a product, *i.e.*, drugs; the hospital was within the distribution chain of the product;[6] the

---

[3]The hospital is not absolved from responsibility merely because the attending physician has the same responsibility. To illustrate, in *Darling*, the court stated: "At that point it became the nurses' duty to inform the attending physician, and if he failed to act, to advise the hospital authorities so that appropriate action might be taken." 33 Ill. 2d 326, 333, 211 N.E.2d 253, 258.

[4]We presume that these costs are either factored into the patient's hospital bill or that they appear expressly on the bill itself.

[5]The duty of each defendant to warn is nondelegable. To illustrate, the negligent failure of the doctors to learn of the risks of the drugs from sources other than the drug manufacturers would not relieve the drug manufacturers of liability for harm resulting from their own failure to adequately warn. See *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 566, 390 N.E.2d 1214, 1233. See also n.3, above.

[6]On this point, we note that hospitals charge patients for the drugs that they dispense. Thus, a sale is involved, and the hospital is clearly within the distribution chain of the product. *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 447-53, 266 N.E.2d 897, 899-902.

product was unreasonably dangerous without adequate warning of its adverse effects; the hospital knew or should have known of the unreasonably dangerous condition; the unreasonably dangerous condition existed at the time the product left the hospital's control; and the unreasonably dangerous condition of the product, *i.e.*, the failure to warn, was a proximate cause of plaintiff's injuries. Thus, this is a classic product liability case if the alleged facts are proved. (See *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194; *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897; *Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 559-60, 390 N.E.2d 1214, 1228-29.) We see no good reason for engrafting an exception in favor of hospitals onto the strict tort liability theory, which in effect, is what the hospital would have us do. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 452, 266 N.E.2d 897, 902.) The hospital's argument has no merit.

 Finally, we address the hospital's argument that the product liability count against it must be dismissed pursuant to Ill. Rev. Stat. 1983, ch. 110, par. 2—621. The statute provides for the dismissal of defendants other than manufacturers in product liability actions under certain circumstances. However, the statute applies only to causes of action accruing on or after September 24, 1979. In the present case, plaintiff was injured on August 1, 1978. Thus, the hospital's argument is baseless.

Accordingly, we hold that each defendant owed a duty to warn as stated in this opinion and that the duty implicitly extended to cover plaintiff and other members of the general public. Therefore, the counts against the respective defendants in the third amended complaint sufficiently state a cause of action. The dismissals are reversed and the case is remanded for further proceedings.

Reversed and remanded.

WHITE, P.J., concurs.

JUSTICE McNAMARA, dissenting:

I respectfully dissent with the majority's conclusion that defendants owe a. duty to a plaintiff who was not a patient, did not use the prescribed drug, and whose injury was not reasonably foreseeable. The majority's extension of tort duty to such a remote party will unduly burden the health care industry and its professionals and is, therefore, contrary to public policy. Thus, I would affirm the trial court's dismissal of the counts against the physicians, hospital and

drug manufacturers.

Illinois courts have not allowed a nonpatient, nonuser of a drug to assert a negligence or strict product liability action for failure to warn the patient or consumer of the drug about adverse effects. The tort rationale for imposing liability on a particular defendant is based on a duty analysis. (*Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 438 N.E.2d 1187.) The concept of duty is:

" '*** a question of whether the defendant is under any obligation for the benefit of the particular plaintiff ***.' This question, i.e., whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the plaintiff's benefit, is one of law for determination by the court." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, quoting Prosser, Torts sec. 53, at 324 (4th ed. 1971).)

Generally, the creation of a legal duty requires that the occurrence involved must have been reasonably foreseeable; it requires more than a mere possibility of occurrence. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Courts have denied liability for negligence to an unforeseeable plaintiff (*Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99), or an unforeseeable occurrence (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307), and have not allowed a strict product liability by an unforeseeable plaintiff for an unforeseeable occurrence. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.) Although questions of foreseeability are ordinarily for the jury to decide, where the facts alleged in a complaint on their face demonstrate that the plaintiff would never be entitled to recover, the complaint is properly dismissed. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

The negligence counts in the present complaint allege that Daniel McCarthy's physicians, Drs. Tracer and Fine, and Michael Reese Hospital and Medical Center prescribed certain drugs to McCarthy without adequate warning which directly resulted in plaintiff's injury. In order for a duty to be imposed, the doctors and hospital should have reasonably foreseen that McCarthy would: (a) be discharged from the hospital that day; (b) consume an alcoholic beverage; (c) operate a motor vehicle; (d) pick up plaintiff as a passenger; (e) drive in a careless manner or with his mental capabilities and physical reactions diminished; and (f) collide with a tree. It seems clear that the events leading to plaintiff's injury are indirect and unconnected to the alleged negligence of the doctors and hospital. See *Van Skike v. Zussman* (1974), 22 Ill. App. 3d 1039, 318 N.E.2d 244.

Although our supreme court has recognized a tort duty to one who is unknown and remote in time and place, this duty is limited by considerations of the nature of the relationship between the parties as well as the foreseeability of the injury. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.) In *Renslow*, the court defined duty as "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection" (67 Ill. 2d 348, 356), and noted at page 357 that the law recognizes only "a limited area of transferred negligence." In other words, absent a special relationship or foreseeable injury, negligence or breach of duty as to one person which ultimately and in fact injures another to whom no duty is owed is not negligence as to the latter person. *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99. See *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 438 N.E.2d 1187.

It is my belief that this court should not make the policy decision to transfer the duty owed to the patient and consumer of the drug to the general public. To do so would extend liability of defendants to an indeterminate class for an indeterminate time in an indeterminate amount. (See *Ultramares Corp. v. Touche* (1931), 255 N.Y. 170, 174 N.E. 441). Our supreme court has carefully circumscribed the limits of transferred negligence to one intimately related individual in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250 (infant unborn at the time of alleged negligence to mother), and a well-defined class in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656 (purchasers or lenders who might foreseeably use a plat that was negligently surveyed for a third party).

The majority recognizes that it is extending the duty to warn of adverse drug effects to the general public, but asserts that this burden on defendants is outweighed by the risks to the general public. The majority fails to acknowledge, however, that the potential liability is overwhelming. The imposition of tort liability upon doctors and hospitals to any person who may be injured by their patients will produce a "chilling effect" on drug therapy for psychiatric patients. The existence of such a legal obligation would require intimate and constant surveillance and would discourage doctors and hospitals from treating patients with medications which can be beneficial. (See *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231.) The heavy burden sought to be imposed on defendants is not outweighed by the risks to the general public, and sound policy considerations militate against that imposition of tort duty here.

Furthermore, the negligence count against Michael Reese is defi-

cient because it does not allege that the hospital breached a recognized duty to the patient McCarthy, resulting in plaintiff's injury. There can be no transferred duty to a nonpatient where there is no duty to warn the patient. A hospital may be liable for injuries suffered by a patient under its care on two distinct theories. (*Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 438 N.E.2d 1194.) The hospital may be liable both for its physician-agent's misconduct on a *respondeat superior* theory or for a violation of an independent duty owed by the hospital to review and supervise medical care administered to a patient. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.

There is no allegation that the physicians who prescribed the drugs to McCarthy were agents or employees of Michael Reese. Nor does the complaint allege that the agents or employees of Michael Reese negligently administered the drugs to McCarthy. Rather, plaintiff alleges that Michael Reese prescribed certain drugs to McCarthy without adequate warning to him. The decision to prescribe certain drugs is within the discretion of the treating physician. (*Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 390 N.E.2d 1214.) Consequently, the duty to warn the patient of adverse drug effects is owed by the physician, not the hospital. Where a negligence complaint against a hospital merely alleges matters within the duty of care owed by the treating physicians, it is properly dismissed. *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.

With respect to the strict product liability claims against the drug manufacturers, E. R. Squibb & Sons, Inc. and SmithKline Corporation, and Michael Reese, the complaint is likewise deficient. In a "failure to warn" strict product liability action, "[t]he product is in a 'defective condition unreasonably dangerous' (Restatement (Second) of Torts sec. 402A (1965)), not because of some defect inherent in the product itself, but because of the absence of an adequate warning accompanying the product." (*Woodhill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 30, 402 N.E.2d 194.) It is the general rule that the manufacturer of prescription drugs has the duty to communicate a warning of potential hazards to the physicians, not to the patient, consumer or the general public. (See *Stevens v. Parke, Davis & Co.* (1973), 9 Cal. 3d 51, 507 P.2d 653.) The rationale for the foregoing rule is that the physician is the "learned intermediary" who decides to treat the patient with a particular drug and it would be virtually impossible for a manufacturer to warn the patient or general public directly. *Carmi-*

*chael v. Reitz* (1971), 17 Cal. App. 3d 958, 95 Cal. Rptr. 381.

The present complaint alleges that defendants drug companies and hospital manufactured or supplied a product which "failed to contain adequate warnings of dangerous propensities." Plaintiff does not charge that defendants failed to adequately warn the treating physicians. Thus plaintiff's complaint fails to allege the breach of one duty that Illinois courts have recognized as a valid failure-to-warn product-liability claim against a manufacturer. Nor does plaintiff allege facts to justify the legal conclusion that the warnings were inadequate, such as failure to warn the physician that a drug consumer should not use alcoholic beverages and then drive. (See *Friederich v. Board of Education* (1978), 59 Ill. App. 3d 79, 375 N.E.2d 141.) Where a complaint fails to allege facts sufficient to set forth the essential elements of a cause of action, it is properly dismissed. *Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 424 N.E.2d 1253.

Additionally, the hospital does not have an independent duty to warn the physician or patient. The treating physician receives the information from the drug companies or from his own sources and exercises the professional judgment to prescribe a certain drug. (*Mahr v. G.D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 390 N.E.2d 514.) Although the hospital is in the chain of distribution of the product, the physician directs the hospital to supply the drug to the patient. Therefore, the physician's role in the course of supplying the drug from the manufacturer to the patient insulates the hospital from strict tort liability. See *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399; *Ullman v. Grant* (1982), 114 Misc. 2d 220, 450 N.Y.S.2d 955.

Moreover, in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1, our supreme court has limited the scope of a manufacturer's liability to a nonuser under a strict product liability theory. There, at page 11, the court stated that "the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen." As with negligence actions, foreseeability is measured by what is objectively reasonable to expect, not merely what might conceivably occur. It was not objectively reasonable for the manufacturers to anticipate that a psychiatric patient treated by individual physicians in a hospital would be discharged from the hospital, consume alcoholic beverages, drive a vehicle in which plaintiff was a passenger, and collide with a tree, injuring plaintiff. Since plaintiff's injury was not reasonably foreseeable and the manufacturers and hospital have no duty to warn a nonpatient, nonuser of a prescription drug, the trial court properly dismissed the strict product liability counts. See *Bobka v. Cook County Hospital*

(1981), 97 Ill. App. 3d 351, 422 N.E.2d 999.

As with the negligence counts, strong public policy considerations preclude the imposition of strict liability on the drug manufacturers and hospital in this instance. One of the principal reasons for the rule of strict liability in tort is the "public interest in human life and health." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 619, 210 N.E.2d 182.) It has been recognized that in certain cases the protection of human life and health would not be enhanced, but would be diminished by the imposition of strict liability. (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390. See Restatement (Second) of Torts sec. 402A, comment k (1966).) If strict tort liability is extended to nonusers of prescription drugs, the potential costs to the drug manufacturers will outweigh the efficacy of producing and selling them. The public may be deprived of effective drugs and medications beneficial to the treatment of disease. Therefore, the public interest in human life and health demands that the drug manufacturers not be held liable to nonusers of prescription drugs.

Similarly, strict liability should not be imposed on the hospital which supplies the drugs to the patient. "[I]n cases which deal with the conduct of individuals or institutions which themselves are pledged to protect human life and health, precautions must be taken to avoid an ultimate diminution of protection." (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 290, 415 N.E.2d 277.) In *Greenberg*, the court held that a hospital, as a provider of medical services, cannot be sued in strict liability in tort for an alleged failure to warn of the dangerous effects of X-ray radiation treatments administered by the hospital. Public policy dictates that the hospital not be held strictly liable in tort for supplying prescription drugs to a patient who later injures a nonpatient who did not consume the drug.

Since I believe that the trial court properly denied plaintiff's motion for leave to file a fourth amended complaint, which incidentally was not furnished to the trial court, I would affirm the judgment of the trial court.