Virgil **HOMER** and Helen Homer, Plaintiffs-Appellees,

v.

**PABST BREWING COMPANY,** Defendant-Appellant.

No. 85–2674.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1986.

Decided Nov. 18, 1986.

Rehearing and Rehearing En Banc Denied Dec. 12, 1986.

John D. Cassiday, Cassiday, Schade & Gloor, Chicago, Ill., for defendant-appellant.

Stephen M. Passen, Stephen M. Passen Ltd., Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs brought this tort action in diversity alleging that defendant Pabst Brewing Co. ("Pabst") is liable for injuries sustained by Virgil Homer in a car accident involving the defendant's employee, Randall Hendricks. The other plaintiff is Virgil Homer's wife, Helen, and Hendricks was an additional defendant. This case raises the issue of the scope of a duty in a voluntary undertaking. For the reasons discussed below, we conclude that the district court should have granted Pabst's motions for a directed verdict and judgment notwithstanding the verdict. Therefore the judgment of the district court is reversed.

Randall Hendricks worked at Pabst's Peoria Heights, Illinois plant as a brewing supervisor. He worked the night shift from 10:30 p.m. to 6:30 a.m. on June 29–30, 1980. He drove to and from work from his home in Normal, Illinois, a drive of less than one hour. On the night of the accident he arrived at work ill. He had stomach aches and cramps and felt nauseated. Between 10:30 and 11:00 p.m. he began having diarrhea every 15 minutes. Around 2:00 a.m. he went to Pabst's medical department and was seen by a nurse, Evelyn Gilchrist, who was to examine and treat Pabst employees. After he described his symptoms, she gave him Kaopectate and Triaminicin. He took only the Kaopectate. He took a nap on the cot in the medical department and then returned to work at approximately 4:00 a.m.

Gilchrist failed to make certain entries on the department's Daily Register. She did not indicate the severity of Hendricks' symptoms or the medication that she had given him, nor whether he had vomited or rested on the cot. There were two doctors available in case the nurse needed assistance and Pabst had, on occasion, provided sick employees transportation home or to the emergency room. But she did not call the doctors, recommend that he go to the emergency room, warn him against driving at the end of his shift, or tell him not to return to work.

When Hendricks left work at the end of his shift, he was still having the symptoms described earlier. At about 7:00 a.m. while driving home Hendricks lost consciousness and struck a semi-tractor trailer on the south shoulder of the highway. Plaintiff, Virgil Homer, was stepping down from the cab of his trailer when Hendricks' car struck him and the truck. Homer suffered permanent disabling injuries in the accident.

Plaintiffs, Virgil Homer and his wife Helen Homer, initiated this negligence suit against Randall Hendricks in 1980, later amending the complaint to include Pabst as a defendant. Counts IV and V alleged that Pabst breached a duty voluntarily taken to care for its employee, causing him to pass out while driving home. The jury returned a verdict for plaintiffs—$503,500 for the husband and $25,650 for his wife.[1] The district court denied Pabst's three motions for directed verdicts and a post-trial motion for judgment notwithstanding the verdict.

Defendant raises numerous issues on appeal. First, Pabst contends that plaintiffs failed to allege a duty owed to them. Second, Pabst argues that the evidence was insufficient to support the verdict. Third, a great number of evidentiary questions are raised. We hold that Pabst owed no

---

1. Plaintiffs filed a partial satisfaction of judgment in the amount of $25,000 which they re- covered from Hendricks.

duty to the plaintiffs as a matter of law and therefore reverse the judgment of the district court without reaching the other questions.

■ Duty is an essential element of negligence and is a question of law to be decided by the trial court. *Laufenberg v. Golab*, 108 Ill.App.3d 133, 63 Ill.Dec. 875, 438 N.E.2d 1238 (1982). Foreseeability is a necessary but not sufficient requirement before imposing a duty. *Gustafson v. Mathews*, 109 Ill.App.3d 884, 887, 65 Ill. Dec. 475, 441 N.E.2d 388 (1982). Under controlling Illinois law, liability may arise from the negligent performance of a voluntary undertaking. *Pippin v. Chicago Housing Auth.*, 78 Ill.2d 204, 209, 35 Ill. Dec. 530, 399 N.E.2d 596 (1979); *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 74, 199 N.E.2d 769 (1964); see Restatement (Second) of Torts, § 324A.[2] But the scope of the duty is limited by the extent of the undertaking. *McColgan v. United Mine Workers of America*, 124 Ill.App.3d 825, 827, 80 Ill.Dec. 183, 464 N.E.2d 1166 (1984) (citing *Pippin*, 78 Ill.2d at 209–210, 35 Ill. Dec. 530, 399 N.E.2d 596). The question here is whether by providing medical care for its employees, Pabst owed a duty to the Homers. After reviewing Illinois law, we conclude that the answer is no.

The imposition of a duty is an act of judicial policymaking. To appreciate the consequences of placing a duty upon a defendant a court should first determine "the likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant." *Barnes v. Washington*, 56 Ill.2d 22, 29, 305 N.E.2d 535 (1973). The Illinois courts have acted with this standard in mind, extending the concept of duty with caution and restraint.

**2.** Section 324A of the Restatement (Second) of Torts provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

See *McColgan*, 124 Ill.App.3d at 829, 80 Ill.Dec. 183, 464 N.E.2d 1166. Under the voluntary undertaking doctrine, Illinois courts have carefully examined the nature of a defendant's undertaking, imposing a duty only to the extent actually assumed by the defendant.

In *Pippin*, plaintiff's decedent was knifed on property operated by the defendant Authority. Because the security service specifically contracted to provide protective services for the "purpose of guarding its [the Authority's] properties * * * and the protection of persons thereon," the court found that a duty existed consistent with § 324A. 78 Ill.2d at 210, 35 Ill.Dec. 530, 399 N.E.2d 596. Likewise, because the Authority voluntarily entered into a contract to provide guard services, it had a duty to use reasonable care in hiring guards. *Id.* Each of the defendants' duties was limited to the extent of its undertaking. The Authority undertook to hire protective services and the Guard Service undertook to provide those services; therefore, absent a showing of negligent selection of guards, only the Guard Service could be liable for the victim's death.

The Illinois appellate court in *Gustafson v. Mathews*, 109 Ill.App.3d 884, 65 Ill.Dec. 475, 441 N.E.2d 388 (1982), restrictively interpreted the scope of the duty associated with a voluntary undertaking. There employees of the defendant tavern assisted an obviously intoxicated man into a car with five children waiting in the back seat. The man drove away, later causing an accident in which he and four of the children were killed. When addressing the issue of voluntary undertaking, the court stated brusquely, "The [tavern] employees' responsibility and undertaking ended when

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

they deposited Gustafson in his car safely." *Id.* at 888, 65 Ill.Dec. 475, 441 N.E.2d 388. Relying on *Gustafson,* the Illinois appellate courts have subsequently reaffirmed the general holding that one who helps an obviously inebriated person into his or her car owes no duty to the general public under the voluntary undertaking doctrine. See, *e.g., Weinke v. Champaign County Grain Ass'n,* 113 Ill.App.3d 1005, 1010, 69 Ill.Dec. 701, 447 N.E.2d 1388 (1983) ("Here, there is no way that the defendant's transporting Eiskamp to his car could be deemed to have been for the benefit of the traveling public."); *Heldt v. Brei,* 118 Ill.App.3d 798, 802, 74 Ill.Dec. 413, 455 N.E.2d 842 (1983).

In *Brunsfeld v. Mineola Hotel & Restaurant,* 119 Ill.App.3d 337, 74 Ill.Dec. 859, 456 N.E.2d 361 (1984), the plaintiff alleged that the defendant hotel had a duty to keep an adjoining snowmobile track cleared of dangers. The court held that the hotel did not assume the duty to clear the debris; rather it only requested that its patrons clear debris from the track. Because the hotel could not control its customers once they were off the hotel premises, the court held that the extent of its undertaking was merely to advise its customers of the condition of the track.

A duty was found in *Camastro v. Village of Rosemont,* 122 Ill.App.3d 405, 78 Ill.Dec. 32, 461 N.E.2d 616 (1984), where the plaintiff was injured at a rock concert where the police were present directing traffic, conducting patdowns, patrolling the stadium, and helping the patrons exit in an orderly manner. The court held that because the police were providing special protection to the concert-goers they could be held liable. Once the police elected to provide some service, they owed a duty to perform that service with skill and competency; liability rested on breach of the duty to perform the gratuitous services with due care. *Id.* at 411, 78 Ill.Dec. 32, 461 N.E.2d 616.

Finally, explicitly recognizing the policy implications of duty analysis, the Illinois appellate court refused to extend to miners' labor unions the duty to monitor and correct unsafe conditions in the mine. *McColgan v. United Mine Workers of America,* 124 Ill.App.3d at 829, 80 Ill.Dec. 183, 464 N.E.2d 1166 ("the consequences of placing the duty upon the unions are too far-reaching to justify the imposition of a duty to correct unsafe conditions throughout the mining industry"). The plaintiff in *McColgan* had alleged that the unions had voluntarily undertaken responsibility for safety conditions, pointing to language in the unions' contracts. But, in harmony with *Gustafson* and *Weinke,* the appellate court strictly construed the contracts as requiring only that the unions protect their members through legislation, negotiation, collective action, and independent enforcement. *Id.* at 828, 80 Ill.Dec. 183, 464 N.E.2d 1166.

■ Given the restrictive view which the Illinois courts have taken of the duty associated with voluntary undertakings, we cannot extend Pabst's duty to the plaintiffs in this case. See *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; *Russell v. Todd,* 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; *Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304 (1st Cir.1973). Pabst maintained a medical department to provide first aid and palliative care to its employees. Palliative care is a soothing, temporary medical service. The purpose of the department is to help its employees get through a work shift, not to provide comprehensive medical care. The department's main responsibility is to assess whether or not an employee should return to work and in rare circumstances to get a seriously ill or injured employee to a doctor. By providing these services Pabst owes a duty to its employees. For example, if Hendricks had been ill and yet was negligently allowed to return to work and had injured himself when operating heavy machinery, Pabst would clearly be liable for any negligence of its medical department. Likewise, if he had lost consciousness while operating heavy equipment and another employee had been injured, Pabst would owe a duty to that person. The scope of Pabst's duty is to

keep its employees safe and well at work.[3] Like the defendants in *Pippin, Gustafson, Brunsfeld, Weinke,* and *Heldt,* Pabst has not volunteered to protect the general public from illnesses that may befall its employees.

Plaintiffs rely on *Kirk v. Michael Reese Hospital,* 136 Ill.App.3d 945, 91 Ill.Dec. 420, 483 N.E.2d 906 (1985) (petition for leave to appeal to the Illinois Supreme Court was granted on March 18, 1986—oral argument has yet to take place). In *Kirk,* the Illinois appellate court extended to hospitals and doctors a duty to warn patients of adverse effects of prescription drugs. *Kirk* is distinguishable from this case because it was a duty-to-warn case. Here there was no jury instruction concerning whether Pabst had a duty to warn Hendricks of the consequences of driving home with his symptoms. Additionally, the defendants in *Kirk* worsened plaintiff's condition by administering the drugs and then failing to warn. See Restatement (Second) of Torts § 324A(a). Here Pabst did nothing to worsen Hendricks' condition; although Triaminicin was provided to him he never took it.

The Illinois courts, whose decisions bind us in this diversity case, have determined that it is unwise to require all employers who maintain first aid stations to evaluate the health of their employees and determine whether they have the capacity to drive safely. See *Gustafson,* 109 Ill. App.3d at 887, 65 Ill.Dec. 475, 441 N.E.2d 388. Such a requirement would only discourage employers from operating occupational health clinics, which benefit the employees. Unlike hospitals, these businesses do not function to provide health care as a service to the general public. Rather they attempt to service the needs of their employees while on the job. Once their shift ends and they leave for home, the company's responsibility and undertaking have ended. See *Weinke,* 113 Ill.App.3d at 1008, 69 Ill.Dec. at 701, 447 N.E.2d 1388. As discussed in previous Illinois appellate deci-

sions, the employer lacks control over its employees' actions once outside the scope of the employment relationship. See *Brunsfeld,* 119 Ill.App.3d at 342, 74 Ill.Dec. 859, 456 N.E.2d 361; *Heldt,* 118 Ill.App.3d at 802, 74 Ill.Dec. 413, 455 N.E.2d 842; *Weinke,* 113 Ill.App.3d at 1008, 69 Ill.Dec. 701, 447 N.E.2d 1388.

Pabst's duty is also limited to the extent of its undertaking under § 324A of the Second Restatement of Torts. Pabst has not assumed a duty to unidentifiable members of the general public by undertaking to provide occupational temporary health care to its employees. For this reason, the judgment of the district court is reversed.

---

**3.** We express no opinion about how the Illinois Workers' Compensation statute might affect the ability of Pabst's employees to recover for negligent acts of Pabst's medical department.